Greg **GARRISON**, et al., Plaintiffs,

v.

**ORACLE CORPORATION**, Defendant.

**Case No. 14-CV-04592-LHK**

United States District Court,
N.D. California,
San Jose Division.

Signed 02/02/2016

Bonny E. Sweeney, Christopher L. Lebsock, Melinda R. Coolidge, Michael D. Hausfeld, Hausfeld LLP, San Francisco, CA, Braden Alexander Beard, Washington, DC, Bryce Aaron Dodds, Tyler Jay Belong, Jeffrey Lee Hogue, Hogue & Belong, David Roger Markham, Janine Renee Menhennet, Maggie K. Realin, Peggy J. Reali, The Markham Law Firm, Debra Hurst, Julie Corbo-Ridley, Kyle Mark Van Dyke, Hurst And Hurst, San Diego, CA, for Plaintiffs.

Daniel Murray Wall, Sarah Meyers Ray, Jesse Mckeithen, Latham & Watkins LLP, San Francisco, CA, Elyse Miriam Green-wald, Boston, MA, Deborah Kay Miller, James C. Maroulis, Oracle USA, Inc. Legal Department, Dorian Estelle Daley, Redwood City, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

Re: Dkt. Nos. 110, 137, 138

LUCY H. KOH, United States District Judge

Plaintiffs Greg Garrison ("Garrison"), Deborah Van Vorst ("Van Vorst"), and Sastry Hari ("Hari") (collectively, "Plaintiffs") bring this putative class action against Defendant Oracle Corporation ("Oracle") for alleged violations of federal and California antitrust laws. ECF No. 105 (Second Amended Complaint, or "SAC").[1] Before the Court is Oracle's motion to dismiss. ECF No. 110. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS Oracle's motion to dismiss with prejudice.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties

Oracle is a Delaware corporation with its principal place of business in Redwood Shores, California. SAC ¶ 22. The world's second-largest software producer by revenue, Oracle specializes in developing and marketing computer hardware systems and enterprise software products, including its own brands of database management systems. *Id.* ¶ 23.

Plaintiffs are former employees of Oracle. *Id.* ¶¶ 16, 18, 20. Garrison worked for Oracle as a senior account manager from

---

1. Unless otherwise indicated, all ECF references are from the docket of No. 14–04592 in the Northern District of California.

"approximately December 2008 to June 2009." *Id.* ¶¶ 16-17. Van Vorst worked for Oracle as a sales operations manager and business analyst from "approximately 2009 to August 2012." *Id.* ¶¶ 18-19. Hari was a senior manager of quality assurance at Oracle from "approximately the middle of 2012 to November 2013." *Id.* ¶¶ 20-21.

Plaintiffs seek to represent the following classes:

> All natural persons who were employed by Oracle on a salaried basis in the technical, creative, and/or research and development fields in the United States from May 10, 2007 to the present. Excluded from the Class are: retail employees, corporate officers, members of the boards of directors, and senior executives of Oracle.

> All natural persons who were employed by Oracle on a salaried basis in a manager level or above position, for product, sales, or general and administrative roles in the United States at any time from May 10, 2007 to the present. Excluded from the Class are: retail employees[,] corporate officers, members of the boards of directors, and senior executives of Oracle.

*Id.* ¶ 64.

### 2. *In re High–Tech Employee Antitrust Litigation*

Here, Plaintiffs allege that Oracle conspired with Google, Inc. ("Google"), Intuit Inc. ("Intuit"), Adobe Systems, Inc. ("Adobe"), International Business Machines Corp. ("IBM") and "various other technology companies," as well as with non-technology based companies and recruiting companies, to fix and suppress employee compensation. SAC ¶¶ 2-3. As the factual and procedural history of *In re High–Tech Employee Antitrust Litigation* ("*High–Tech*"), as well as the U.S. Department of Justice's ("DOJ") investigations and complaints, are relevant to this action, the Court briefly summarizes the background of that litigation below. *See* SAC ¶¶ 48, 50-53 (discussing DOJ investigation).

From 2009 to 2010, DOJ's Antitrust Division investigated the employment and recruitment practices of various Silicon Valley technology companies, including Adobe, Apple Inc. ("Apple"), Intel Corp. ("Intel"), Intuit, and Google. *See High–Tech*, 856 F.Supp.2d 1103, 1109 (N.D.Cal. 2012). DOJ filed its complaint against Adobe, Apple, Google, Intel, Intuit, and Pixar on September 24, 2010. *Id.* On December 21, 2010, DOJ filed another complaint against Lucasfilm Ltd. ("Lucasfilm"). *See* No. 11–2509, ECF No. 93-4. The defendants in these two lawsuits stipulated to proposed final judgments in which they agreed that DOJ's complaints had stated claims under federal antitrust law and agreed to be "enjoined from attempting to enter into, maintaining or enforcing any agreement with any other person or in any way refrain from . . . soliciting, cold calling, recruiting, or otherwise competing for employees of the other person." *High–Tech*, 856 F.Supp.2d at 1109–10 (quoting Adobe Proposed Final Judgment at 5). The U.S. District Court for the District of Columbia entered the stipulated proposed final judgments on March 17, 2011, and June 2, 2011, respectively. *Id.* at 1110.

Private plaintiffs filed five separate state court actions between May and July 2011. Following removal, transfer to San Jose to the undersigned judge, and consolidation as *In re High–Tech Employee Antitrust Litigation*, the *High–Tech* plaintiffs filed a consolidated amended complaint on September 13, 2011. *Id.* at 1112–13. In their complaint, the *High–Tech* plaintiffs alleged antitrust claims against their employers, claiming that the defendants had conspired "to fix and suppress employee compensation and to restrict employee mobility." *Id.* at 1108. More specifically, the *High–Tech*

plaintiffs alleged a conspiracy comprised of "an interconnected web of express bilateral agreements." *Id.* at 1110. One such agreement, the "Do Not Cold Call" agreement, involved one company placing the names of another company's employees on a "Do Not Cold Call" list and instructing its recruiters not to cold call the employees of the other company. *Id.* In addition to the "Do Not Cold Call" agreements, the *High–Tech* plaintiffs alleged that Pixar and Lucasfilm entered into express, written agreements (1) not to cold call each other's employees; (2) to notify the other company whenever making an offer to an employee of the other company; and (3) not to engage in "bidding wars." *Id.* at 1111.

On May 17, 2013, the *High–Tech* plaintiffs publicly filed a number of documents in support of their supplemental motion for class certification. No. 11–2509, ECF Nos. 418, 428. One of those documents was an internal Google memo describing Google's hiring protocols and practices as of "1.7.2008." No. 11–2509, ECF No. 428-10 at GOOG-HIGH-TECH-00059839. At one point, the Google memo refers to certain companies on the " 'Restricted Hiring' list," including Microsoft, Novell, Sun Microsystems, and, as relevant here, Oracle. *Id.* Although DOJ began investigating Oracle with the *High–Tech* defendants in 2009, DOJ concluded its investigation into Oracle without filing a lawsuit on October 29, 2014. SAC ¶ 53.

### 3. Alleged Conspiracy in the Instant Lawsuit

Plaintiffs allege a conspiracy among Oracle, other technology companies, the technology departments of non-technology-based companies, and recruiting companies "to fix and suppress employee compensation, and impose unlawful restrictions on employee mobility." SAC ¶¶ 2-4, 9. As part of this conspiracy, Oracle allegedly entered into a series of anti-solicitation "Secret Agreements." *Id.* ¶ 2. Other than the senior executives who "actively managed and enforced" the Secret Agreements, Oracle employees "were not apprised of any of these Secret Agreements and did not consent to this restriction on their mobility of employment." *Id.* ¶¶ 34, 57.

Plaintiffs allege three types of Secret Agreements. First, Oracle allegedly established a "no hire" list, on which Oracle placed companies that entered into a reciprocal agreement with Oracle not to solicit each other's employees. *Id.* ¶¶ 26-27. Plaintiffs do not further define the terms of the "no hire" agreements, so it is unclear whether the "no hire" agreements alleged here include all of the activities alleged in *High–Tech*: (1) not to cold call each other's employees, (2) to notify the other company whenever making an offer to an employee of the other company, and (3) not to engage in "bidding wars." *See High–Tech,* 856 F.Supp.2d at 1111.

Second, Plaintiffs allege that Oracle formed "gentlemen's agreements" when the CEOs of "certain companies" would agree orally not to solicit one another's employees. SAC ¶ 6. According to Plaintiffs, "gentlemen's agreements" were often not added to the "no hire" list. *Id.* ¶ 31. Third, Plaintiffs allege a "Restricted Hiring Agreement" between Oracle and Google. *Id.* ¶ 5. The Restricted Hiring Agreement between Oracle and Google was the sole Secret Agreement alleged in Garrison's original complaint. *See Garrison v. Oracle Corp.,* No. 14–CV–04592–LHK 2015 WL 1849517, at *2 (N.D.Cal. Apr. 22, 2015).

Now, the SAC specifically identifies the following Secret Agreements:

- In an email dated March 30, 2006, Oracle's Director of Recruiting stated that Oracle had a "gentleman's agreement with IBM whereby both companies would not solicit each other's

consultants." SAC ¶ 30; *see also id.* ¶ 44 (January 16, 2008 email from Oracle's Director of Recruiting, who told an Oracle recruiter to stop soliciting employees from IBM). The SAC does not allege the date that Oracle entered into the agreement with IBM.

- In May 2007, Oracle and Google entered into a Restricted Hiring Agreement: "Not to pursue manager level and above candidates for Product, Sales, or [General and Administrative] roles—even if they have applied to [any of the other companies who are parties to the Restricted Hiring Agreement]." *Id.* ¶ 32 (second alteration in original). A Google employee confirmed the Restricted Hiring Agreement in an October 9, 2007 email: "I would like to make sure there is no confusion around our Restricted Hiring Rule: We are not to pursue any PSG&A [Product, Sales, General, and Administrative] candidate at the manager level or above from Microsoft, Novell, Oracle, or Sun." *Id.* ¶ 33 (alteration in original) (emphases omitted).

- In a June 4, 2007 email, Oracle's Director of Recruiting memorialized an agreement with Deloitte: "Please get a note out to our team that no emails of this kind and no solicitation voicemails should be left for Deloitte candidates or to any other candidates who we have no-hire agreements with." *Id.* ¶ 40.

- In an email dated November 30, 2007, a VP at Oracle contacted Oracle's HR department and stated "pls confirm that we can put Micros on a no hire list." *Id.* ¶ 42. The SAC does not specify whether Micros was added to the "no hire" list.

- By March 19, 2009, Oracle and Adobe came to an agreement "not to directly or indirectly solicit employees from any company on the 'no hire' list." *Id.* ¶ 47. Plaintiffs allege that Adobe was not added to the "no hire" list but had a "gentleman's agreement" with Oracle. *Id.* ¶ 28.

- On December 29, 2009, Oracle added CoreTech, Inc. ("CoreTech") to the "no hire" list. *Id.* ¶ 49. Plaintiffs allege that CoreTech's inclusion on the "no hire" list was scheduled to end on September 4, 2012. *Id.*

- At unspecified dates, Oracle added Texas Instruments, Honeywell, Novell, and Novartis to the "no hire" list. *Id.* ¶ 27.

- At an unspecified date, Oracle and recruiting company Riviera Partners agreed that Riviera Partners would "not perform job placement services for Oracle employees." *Id.* ¶ 55. This agreement was in place at least in 2014, when Riviera Partners told a former Senior Director at Oracle that Riviera Partners could not place the former Oracle employee due to Riviera Partners's agreement with Oracle. *Id.*

- At an unspecified date, Oracle added Intuit to the "no hire" list. *Id.* ¶ 27. In an undated email, an Intuit recruiting employee expressed concern about hiring a consultant, asking "can we make an offer to him after he signs on as a consultant and not be in violation of non-solicitation clauses from Oracle (where he is employed)?" *Id.* ¶ 29 (emphases omitted).

- Hewlett-Packard and Xerox were "part of the conspiracy at some time from 2007 through 2015." *Id.* ¶ 75. Plaintiffs do not allege when Oracle entered into an agreement with either Hewlett-Packard or Xerox, or the content of any such agreements.

Altogether, Plaintiffs identify around 15 companies with which Oracle allegedly en-

tered into a Secret Agreement. Plaintiffs further point to "scores and scores" and a "plethora" of other companies with Secret Agreements with Oracle. *Id.* ¶¶ 7, 27. Plaintiffs do not identify these companies, or the content or date of these companies' Secret Agreements with Oracle. Plaintiffs allege that "Oracle continued to enter into new Secret Agreements with companies" and to ratify the Secret Agreements "well into 2012." *Id.* ¶ 49. However, the last year that Plaintiffs allege that Oracle entered into a specific Secret Agreement is 2009. *See generally* SAC.

Plaintiffs additionally allege that Oracle ensured that its employees and other companies adhered to the "no hire" list. For example, internally, Oracle disseminated the "no hire" list to "key human resource and recruiting personnel" in June 2007. *Id.* ¶ 31; *see also id.* ¶ 41 (June 8, 2007 email from Oracle's Director of Recruiting to the "recruiting team," stating, "While we have no written policy concerning non-solicitation of our partners' employees; our policy is and continues to be that **we do not directly solicit from our partners**. . . . Our partners have the same arrangement with Oracle"). Externally, Oracle could allegedly fine other companies for violating a Secret Agreement. *Id.* ¶¶ 35-36. Additionally, Oracle allegedly threatened companies with baseless lawsuits "as a means to punish them for breaching the Secret Agreement." *Id.* ¶¶ 37-39.

According to Plaintiffs, the effect of the Secret Agreements was to depress the salaries of "all employees of participating companies." *Id.* ¶ 60. In a restricted hiring market, Oracle and the other companies with Secret Agreements faced decreased pressure to match or better a rival's employment offer to an employee. *Id.* Thus, the Secret Agreements "fix[ed] the compensation of the employees of participating companies at artificially low levels." *Id.* ¶ 61. Moreover, depressing the wages of

"top tier employees" also allegedly suppressed the wages of all employees underneath the top tier employees. *Id.* ¶ 60.

### 4. Statute of Limitations Allegations

The SAC adds a new section titled "Statute of Limitations," which alleges that Plaintiffs' claims were timely filed for two reasons: (1) Oracle's conspiracy was a continuing violation of the antitrust laws until at least 2013; and (2) Oracle fraudulently concealed the conspiracy from Plaintiffs until 2013. Plaintiffs' specific allegations as to each theory follow.

#### a. Continuing Violation

Plaintiffs allege that "Oracle's conspiracy was a continuing violation through which Oracle repeatedly invaded Plaintiffs' and Plaintiff Class' interests by adhering to, enforcing, and reaffirming the anticompetitive" Secret Agreements. SAC ¶ 73. First, Plaintiffs allege that "Oracle continued to enter into new Secret Agreements with companies . . . well into 2012." *Id.* ¶ 49. Second, Plaintiffs allege that, during their collective employment with Oracle from 2009 to 2013, neither Plaintiff Van Vorst nor Plaintiff Hari was solicited by any technology company with which Oracle had a Secret Agreement. *Id.* ¶¶ 18, 20, 77, 80. Third, all Plaintiffs were unable to find employment in the technology industry after leaving Oracle, allegedly due to the Secret Agreements. *Id.* ¶¶ 74-81. Plaintiff Van Vorst specifically alleges that, during the end of her employment with Oracle, she applied to "technology companies, including those with which Oracle had entered a Secret Agreement," and was not hired by said companies. *Id.* ¶ 78.

#### b. Fraudulent Concealment

Plaintiffs allege that Oracle fraudulently concealed the conspiracy in two ways, which prevented Plaintiffs from filing their claims on time. First, Plaintiffs allege that Oracle affirmatively aimed "to

avoid dissemination of the [S]ecret [A]greements and restrict the knowledge to the smallest possible group within Oracle." *Id.* ¶ 101; *see also id.* ¶ 109 (knowledge of the Secret Agreements was allegedly "confined to only the most senior executives and the most senior employees from its human resources and recruiting departments"). As "representative" of this corporate policy, Plaintiffs highlight a January 17, 2008 email by Oracle's Director of Recruiting telling an Oracle recruiter, "DO NOT email any employees of our partners or employees on our no-hire list—period." *Id.* ¶ 98, 101. Plaintiffs also point to a February 12, 2008 email by an Oracle employee to "the HR department" allegedly "attaching a 'No Hire' list, and directing them to not forward, but to call if they have any questions." *Id.* ¶ 100. Additionally, Plaintiffs allege that Oracle required DOJ to redact any publicly filed or disclosed documents that Oracle produced during the DOJ investigation, "so as not to publicly reveal the substance of the Secret Agreements and the specific companies involved." *Id.* ¶ 104. Because of Oracle's active concealment of the Secret Agreements, Plaintiffs allegedly received notice of the Secret Agreements only when certain documents were unsealed during the *High–Tech* litigation on May 17, 2013. *Id.* ¶¶ 105-106.

Second, Plaintiffs allege that Oracle misled Plaintiffs into believing their compensation was competitive. Plaintiff Garrison alleges that "an Oracle human resource employee" falsely informed Garrison that "Oracle's commission structure was competitive with other technology companies." *Id.* ¶ 90. Plaintiff Hari alleges that he was "directed by a senior executive to inform his team of subordinates that their compensation levels at Oracle were highly competitive and that they should be very pleased with the level of compensation Oracle offered." *Id.* According to Plaintiff Hari, the statement was false because Ora-

cle was actively suppressing compensation levels by way of the Secret Agreements. *Id.* Further, Plaintiffs allege that "Class members repeatedly asked Oracle about how compensation was determined," but Oracle responded misleadingly that compensation was "competitive." *Id.* ¶ 97. According to Plaintiffs, in these conversations about compensation Oracle "never once admitted that it had any agreements with any other company not to solicit one another's employees." *Id.* ¶ 103.

In addition to these alleged misrepresentations, Plaintiffs claim that Oracle's public filings with the Securities and Exchange Commission ("SEC") have been misleading. *Id.* ¶¶ 92-94. For example, Oracle's 2008 filing stated "We may be unable to hire enough qualified employees or we may lose key employees....In the software industry, there is substantial and continuous competition for highly skilled business, product development, technical and other personnel .... We may also experience increased compensation costs that are not offset by either improved productivity or higher prices." *Id.* ¶ 93 (emphases omitted). Plaintiffs aver that Oracle made substantially identical statements in Oracle's 10-K SEC filings from 2010 to 2013. *Id.* ¶ 94. Plaintiffs also highlight Oracle's employee handbook, which from 2008 to 2014 stated, "Oracle commits rigorously to observing applicable antitrust or competition laws of all countries or organizations." *Id.* ¶¶ 85-87.

### B. Procedural History

In light of the relationship between the instant case and *High–Tech*, the Court briefly summarizes the relevant procedural history in *High–Tech* before turning to the instant case.

#### 1. *High–Tech*

The *High–Tech* defendants removed the first state court action on May 23, 2011.

No. 11–2509, ECF No. 1. The last state court action in the *High–Tech* litigation was removed on July 19, 2011. No. 11–2509, ECF No. 41. The *High–Tech* cases were reassigned to the undersigned judge on August 5, 2011. No. 11–2509, ECF No. 60. The *High–Tech* cases were consolidated on September 12, 2011. No. 11–2509, ECF No. 64. The First Consolidated Amended Complaint was filed on September 13, 2011. No. 11–2509, ECF No. 65. On April 18, 2012, the Court granted in part and denied in part the *High–Tech* defendants' joint motion to dismiss and denied Lucasfilm's motion to dismiss. No. 11–2509, ECF No. 119. On April 5, 2013, the Court granted in part and denied in part the *High–Tech* plaintiffs' motion for class certification with leave to amend. No. 11–2509, ECF No. 382. The Court granted the *High–Tech* plaintiffs' supplemental motion for class certification on October 24, 2013. No. 11–2509, ECF No. 531. On November 13, 2013, the *High–Tech* defendants filed a Rule 23(f) petition before the Ninth Circuit, requesting permission to appeal this Court's October 24, 2013 class certification order. No. 13–80223 (9th Cir.), ECF No. 1. The Ninth Circuit denied the defendants' petition on January 14, 2014. No. 13–80223 (9th Cir.), ECF No. 18.

In the interim, three of the *High–Tech* defendants—Intuit, Lucasfilm, and Pixar—reached an early settlement with the plaintiffs. On September 21, 2013, the *High–Tech* plaintiffs filed a motion for preliminary approval of a proposed class action settlement as to defendants Intuit, Lucasfilm, and Pixar. No. 11–2509, ECF No. 501. On October 30, 2013, the Court granted preliminary approval. No. 11–2509, ECF No. 540. The Court granted final approval as to that settlement on May 16, 2014. No. 11–2509, ECF No. 915. The Court entered a final judgment with regards to Lucasfilm, Pixar, and Intuit on June 9, 2014. No. 11–2509, ECF No. 936. At the request of Intuit, the Court entered

an amended final judgment on June 20, 2014. No. 11–2509, ECF No. 947.

The remaining *High–Tech* defendants—Adobe, Apple, Google, and Intel—filed individual motions for summary judgment, and joint motions for summary judgment and to strike certain expert testimony on January 9, 2014. No. 11–2509, ECF Nos. 554 (Intel), 556 and 557 (joint motions), 560 (Adobe), 561 (Apple), 564 (Google). The Court denied the *High–Tech* defendants' individual motions for summary judgment on March 28, 2014. No. 11–2509, ECF No. 771. On April 4, 2014, the Court granted in part and denied in part the *High–Tech* defendants' motion to strike, and denied the defendants' joint motion for summary judgment. No. 11–2509, ECF No. 788.

On May 22, 2014, the *High–Tech* plaintiffs filed a motion for preliminary approval of class action settlement as to the remaining defendants. No. 11–2509, ECF No. 920. On August 8, 2014, the Court denied the *High–Tech* plaintiffs' motion for preliminary approval and concluded that the proposed settlement did not fall "within the range of reasonableness." No. 11–2509, ECF No. 974 at 30. On September 4, 2014, the *High–Tech* defendants filed a petition for a writ of mandamus with the Ninth Circuit. No. 14–72745 (9th Cir.), ECF No. 1. On September 22, 2014, the Ninth Circuit found that the petition "raises issues that warrant a response," and ordered briefing. No. 14–72745 (9th Cir.), ECF No. 2. On January 13, 2015, the *High–Tech* defendants filed correspondence with the Ninth Circuit referring to a new proposed settlement agreement. No. 14–72745 (9th Cir.), ECF No. 21. On January 30, 2015, the defendants filed an unopposed motion to dismiss the petition, which the Ninth Circuit granted on February 2, 2015. No. 14–72745 (9th Cir.), ECF Nos. 23, 24.

On January 15, 2015, the *High–Tech* plaintiffs filed a motion for preliminary approval of class action settlement as to the remaining defendants. No. 11–2509, ECF No. 1032. In this second proposed class action settlement, the parties had reached a settlement amount exceeding the previously rejected settlement by approximately $90.5 million. *Id.* at 1. Following a fairness hearing on March 2, 2015, the Court granted preliminary approval to the January 2015 settlement agreement on March 3, 2015. No. 11–2509, ECF Nos. 1051, 1054. The Court held a final approval hearing on July 9, 2015. No. 11–2509, ECF No. 1096. Plaintiffs' counsel completed their supplemental briefing on attorney's fees and potential opt outs on July 24, 2015. ECF Nos. 1108, 1109. On September 2, 2015, the Court granted final approval of the class action settlement and entered final judgment with regard to Adobe, Apple, Google, and Intuit. No. 11–2509, ECF Nos. 1111, 1113.

### 2. Instant Lawsuit

Plaintiff Garrison filed the class action complaint on October 14, 2014. ECF No. 1. On October 22, 2014, the Court related this action to *High–Tech*. ECF No. 6. After initially answering the complaint on November 10, 2014, ECF No. 9, Oracle filed an amended answer on December 1, 2014, ECF No. 12.

On January 5, 2015, Oracle filed a motion for judgment on the pleadings, ECF No. 17, which the Court granted on April 22, 2015, ECF No. 72. The Court found that Garrison's claims were time barred under the applicable statutes of limitations, and that Garrison had failed to adequately plead a "continuing violation" or "fraudulent concealment" theory to toll the statutes of limitations. *See Garrison*, 2015 WL 1849517, at *9. The dismissal was without prejudice, as the Court determined that Garrison might be able to allege sufficient facts to support his continuing violation or fraudulent concealment theories. *Id.*

On May 22, 2015, Garrison filed an amended complaint. ECF Nos. 98 (conditionally sealed); 102 (unredacted). After the Court approved a stipulation for Garrison to file a second amended complaint, ECF No. 104, Garrison, along with additional plaintiffs Van Vorst and Hari, filed the SAC on June 5, 2015, ECF No. 105. The SAC asserts causes of action under the following statutes: (1) Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright Act (the "Cartwright Act"), Cal. Bus. & Prof. Code § 16720 *et seq.*; (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) California's Business & Professions Code § 16600 *et seq.* ("Section 16600"). SAC ¶¶ 111-142. Plaintiffs seek damages, pre– and post-judgment interest, attorneys' fees and expenses, and a permanent injunction. *Id.* at 29.

Oracle filed the instant motion to dismiss on June 25, 2015. ECF No. 110 ("Mot."). Oracle renews the argument that Plaintiffs' claims are untimely, and also moves to dismiss for failure to state a claim on the merits. *See id.* Oracle also filed a request for judicial notice. ECF No. 111. On July 15, 2015, the Court granted a stipulation to strike one paragraph of the SAC. ECF No. 113. On July 22, 2015, Plaintiffs opposed the motion to dismiss, ECF No. 114 ("Opp."), and filed a request for judicial notice, ECF No. 114-1. Oracle replied on August 13, 2015. ECF No. 125 ("Reply"). On December 4, 2015, Plaintiffs filed an ex parte motion to supplement the record and to stay proceedings pending Plaintiffs' anticipated motion to compel compliance with a subpoena. ECF No. 138. Plaintiffs also filed a motion to seal materials associated with the motion to supplement the record. ECF No. 137. Although

Oracle was not served with the ex parte motion, Oracle filed an opposition on December 7, 2015. ECF No. 139. As of the date of this order, Plaintiffs have not filed the anticipated motion to compel.

On December 17, 2015, the Court ordered the parties to file supplemental briefing. ECF No. 144. The Court noted that the parties, in the original briefing, did not dispute that Plaintiffs' claims accrued under the default accrual rules by 2009, at the latest, and thus that Plaintiffs' claims were untimely absent an exception to the default accrual rules or a tolling doctrine. *Id.* The Court asked the parties to address whether Plaintiff Hari's employment at Oracle impacts the statutes of limitations analysis. *Id.* On January 5, 2016, the parties filed simultaneous briefs in response to the Court's order. ECF Nos. 148 (Oracle's supplemental brief); 149 (Plaintiffs' supplemental brief). Plaintiffs filed an administrative motion to file Plaintiffs' supplemental brief and associated documents under seal. ECF No. 150. On January 15, 2016, the parties filed simultaneous reply briefs. ECF Nos. 153 (Oracle's reply); 155 (Plaintiffs' reply).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir.2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004).

### B. Rule 9(b)

 Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (citation omitted). "A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir.2011). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

### C. Leave to Amend

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15...[is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir.2008).

## III. DISCUSSION

Oracle moves to dismiss Plaintiffs' complaint on four grounds: (1) all of Plaintiffs' claims are barred by the applicable statute of limitations; (2) Plaintiffs fail to state a Sherman Act claim because Plaintiffs fail to adequately allege an agreement between Oracle and Google or a conspiracy among Oracle and other companies; (3) Plaintiffs are ineligible for restitution or disgorgement under the UCL; and (4) Plaintiffs, as former Oracle employees, lack standing to seek injunctive and declaratory relief. Mot. at 7-25. As the Court concludes below that Plaintiffs' claims are time barred, the Court need not reach the remainder of Oracle's arguments.

As a preliminary matter, the Court addresses the parties' requests for judicial notice and Plaintiffs' ex parte motion to supplement the record and to stay the ruling. The Court then turns to the statutes of limitations applicable to Plaintiffs' claims. Next, the Court considers Plaintiffs' arguments that an exception to the default accrual rules or a tolling doctrine renders Plaintiffs' claims timely.

### A. Motions for Judicial Notice, to Supplement the Record, and to Stay the Ruling

#### 1. Judicial Notice

Although a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, the Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir.2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir.2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or

"can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

■ Oracle requests that the Court take judicial notice of documents incorporated by reference into the SAC, including emails quoted or relied upon in SAC ¶¶ 29, 33, 36, 40, 45, 47, 49, 98-100; Oracle documents quoted or relied upon in SAC ¶¶ 84-110; and deposition testimony relied upon in SAC ¶ 54. Oracle also requests judicial notice of matters of public record (complaints and final judgments in federal district courts), and a newspaper article. Plaintiffs request the Court take judicial notice of certain matters of public record (an official government document in a DOJ file, and complaints and final judgments in federal district courts). These documents are appropriate for judicial notice. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.2010) (materials incorporated by reference into the complaint); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir.2010) (the fact that information was published in news articles); *Lee*, 250 F.3d at 689–90 (matters of public record). Accordingly, the Court GRANTS the parties' unopposed requests for judicial notice. *See* ECF Nos. 111, 114–1.

### 2. Plaintiffs' Ex Parte Motion to Supplement the Record and to Stay the Ruling

■ On Friday evening, December 4, 2015—almost four months after the completion of briefing in the instant motion—Plaintiffs filed an ex parte motion to supplement the record and to stay the Court's ruling on the instant motion pending an anticipated motion to compel documents from the defendants and the counsel for the plaintiffs in the *High–Tech* litigation. ECF No. 138 (noting the motion to compel is "set to be filed next week"). Plaintiffs seek to supplement the record with numerous documents allegedly discovered after the completion of the briefing on the instant motion, which Plaintiffs claim demonstrate Oracle's alleged antitrust violations and fraudulent concealment. Plaintiffs filed a corresponding motion to file the documents under seal. ECF No. 137. Although Oracle was not served with Plaintiffs' filings, and did not have access to the documents that Plaintiffs filed conditionally under seal, Oracle filed an opposition on December 7, 2015. ECF No. 139. As of the date of this order, Plaintiffs have not filed the anticipated motion to compel documents from the parties involved in the *High–Tech* litigation.

Civil Local Rule 7-10 provides that a party may file an ex parte motion "only if a statute, Federal Rule, local rule or Standing Order authorizes the filing of an ex parte motion," unless otherwise ordered by the Court. Civ. L.R. 7-10. The Rule also provides that the ex parte motion "must include a citation to the statute, rule or order which permits the use of an ex parte motion to obtain the relief sought." *Id.* Plaintiffs' ex parte motion does not cite to any authority permitting the filing of an ex parte motion. Nor does Plaintiffs' motion provide any reason for filing ex parte. Accordingly, the Court STRIKES Plaintiffs' motion. *See* Civ. L.R. 7-10; *cf. Bertuccio v. San Benito Cty.*, No. 13–CV–01339–LHK, 2013 WL 2147421, at *3 (N.D.Cal. May 15, 2013) ("None of Plaintiffs' motions identified any authorization for her ex parte communications. This alone would justify denial...."). The Court DENIES as moot Plaintiffs' corresponding motion to file under seal.[2]

---

**2.** The Court notes that Plaintiffs also apparently failed to comply with the Court's local rules when filing the motion to seal. When seeking to file under seal a document designated as confidential by the opposing party or a non-party, Civil Local Rule 79-5(e) requires

■ Even if the Court were to consider Plaintiffs' motion, however, the Court would decline to supplement the record or stay the instant ruling. First, the proffered documents would not alter the Court's statutes of limitations analysis. The proffered documents all refer to conduct from 2006 to 2009. However, as discussed below, Plaintiffs' claims are untimely unless Plaintiffs allege actions by Oracle after October 14, 2010—i.e., within four years of the filing of the complaint on October 14, 2014. Additionally, the documents do not show fraudulent concealment by Oracle. Rather, the documents are consistent with the fraudulent-concealment allegations and judicially-noticed documents already in the record. Thus, the proffered documents would not render Plaintiffs' claims timely.

Second, on a motion to dismiss, the Court does not look beyond the pleadings to evidence presented by the parties, and Plaintiffs do not assert that the proffered documents are proper subjects of judicial notice. *See Manzarek*, 519 F.3d at 1030–31 (noting that on a motion to dismiss, the district court may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice"). There is therefore no basis for the Court to consider the proffered documents.

Third, the majority of "newly discovered" documents proffered by Plaintiffs were, according to a declaration by Oracle, produced by June 2015, a month before Plaintiffs filed their opposition to the instant motion. *See* ECF Nos. 140, 141.

Plaintiffs offer no reason for their multiple-month delay in seeking to supplement the record or to stay the case to conduct further discovery. *See generally* ECF No. 138. It appears that Plaintiffs' motion was not triggered by new discovery in this case, but by the Court's November 23, 2015 dismissal of virtually identical allegations brought by the same Plaintiffs' counsel against Microsoft. *See Ryan v. Microsoft ("Ryan II")*, No. 14–CV–04634–LHK, 147 F.Supp.3d 868, 891–93, 2015 WL 7429495, at *18–19 (N.D.Cal. Nov. 23, 2015). Additionally, Plaintiffs offer no authority that discovery from a third party, sought after briefing on a motion to dismiss was completed, justifies a stay of that motion. Nor have Plaintiffs filed the anticipated motion to compel that forms the basis of Plaintiffs' motion to stay, although Plaintiffs have had over two months to do so. Accordingly, Plaintiffs have not shown good cause to supplement the record or to stay the instant ruling.

## B. Four-Year Statute of Limitations

Plaintiffs do not dispute that Plaintiffs' claims under the Sherman Act, Cartwright Act, UCL, and Section 16600 are all subject to a four-year statute of limitations. *See Garrison*, 2015 WL 1849517, at *6 (applying-four year statute of limitations) (citing 15 U.S.C. § 15b (Sherman Act); Cal. Bus. & Prof. Code § 16750.1 (Cartwright Act); Cal. Bus. & Prof. Code § 17208 (UCL); Cal. Civ. Proc. Code § 343 (catch-all limitations statute applicable to Section 16600)); *see also Ryan v. Microsoft*

Plaintiffs to file a declaration identifying the document sought to be sealed and the designating party. Civ. L.R. 79-5(e). Plaintiffs did not identify non-parties Google or IBM in Plaintiffs' required declaration. *See* ECF No. 137-1. However, on December 9, 2015, Oracle informed the Court that Plaintiffs sought to seal documents designated as confidential by Google and IBM. ECF No. 141. On December 14, 2015, Google filed a declaration stating that Plaintiffs sought to seal documents designated as confidential by Google, and that Google was informed by Oracle's counsel that Plaintiffs sought to seal these documents. ECF No. 143. IBM has not filed a response to Plaintiffs' motion to seal, and it is not clear to the Court whether Plaintiffs informed IBM that Plaintiffs sought to file documents designated by IBM as confidential.

*Corp.* (*"Ryan I"*), No. 14–CV–04634–LHK, 2015 WL 1738352, at \*10–12 (N.D.Cal. Apr. 10, 2015) (concluding that these four statutes are each subject to a four-year limitations period). Because the original complaint was filed on October 14, 2014, *see* ECF No. 1, Plaintiffs must allege either that the causes of action accrued after October 14, 2010, or that the statutes of limitations were tolled until at least October 14, 2010, in order to plead timely claims.

### C. Accrual of Plaintiffs' Claims under the Default Accrual Rules

The parties agree that all of Plaintiff Garrison's and Plaintiff Van Vorst's claims accrued under the default accrual rules by 2009, at the latest. *See, e.g.*, ECF No. 148, at 1 (Oracle claiming that the "statute of limitations began to run no later than 2009 and expired in 2013"); ECF No. 150, at 3 (Plaintiffs stating that Garrison's and Van Vorst's claims accrued when Garrison and Van Vorst were injured by Oracle's alleged misconduct between 2007-2009). Accordingly, an exception to the default accrual rules or a tolling doctrine must apply in order for Garrison's and Van Vorst's claims to be timely.

The parties dispute when Plaintiff Hari's claims accrued under the default accrual rules, and thus whether an exception to the default accrual rules or a tolling doctrine is necessary to render Hari's claims timely. In order to determine the accrual of Hari's claims under the default accrual rules, the Court must first review the history of the parties' dispute over the accrual of Hari's claims.

In briefing Oracle's motion for judgment on the pleadings, the parties did not dispute that, for Garrison's federal Sherman Act claim and three California state law claims, under the default accrual rules, "the applicable statutes of limitations began to run in May 2007 (i.e., when Plaintiff

alleges Oracle and Google entered into the Agreement)." *Garrison v. Oracle Corp.*, No. 14–CV–04592–LHK, 2015 WL 1849517, at \*6 (N.D.Cal. Apr. 22, 2015). Accordingly, the parties agreed that an exception to the default accrual rules or a tolling doctrine was necessary for all of Garrison's claims to be timely. *Id.*

In the SAC, Plaintiffs allege new Secret Agreements, in addition to the alleged 2007 agreement between Oracle and Google. The SAC also adds Hari as a named plaintiff. ECF No. 105. Highlighting the new Secret Agreements, Oracle argues in the instant motion to dismiss that, according to the default accrual rules, Plaintiffs' Sherman Act and state law claims accrued by 2009, which is the latest date that Plaintiffs allege that Oracle entered a specific Secret Agreement. Mot. at 7; Reply at 2. Thus, according to Oracle, the statutes of limitations for all of Plaintiffs' claims expired in 2013 absent an exception to the default accrual rules or a tolling doctrine. Reply at 2.

In Plaintiffs' opposition to the instant motion to dismiss, Plaintiffs do not dispute Oracle's contention that Plaintiffs' Sherman Act and state law claims accrued in 2009, at the latest. *See generally* Opp. Nor do Plaintiffs analyze when Plaintiffs' claims accrued according to the default accrual rules. Rather, Plaintiffs assert that an exception to the default accrual rules or a tolling doctrine applies and thus renders Plaintiffs' claims timely. *See id.*

Neither party separately addressed Hari's claims in the briefing on the instant motion to dismiss. Thus, the Court requested supplemental briefing on whether Hari's employment at Oracle, which began in 2012, impacts the statute of limitations analysis. ECF No. 144. In the order requesting supplemental briefing, the Court summarized its understanding of the parties' positions on the accrual of Plaintiffs'

claims under the default accrual rules. First, the Court noted that the parties agreed, in the briefing for the motion for judgment on the pleadings, that the federal and state statutes of limitations began to run in May 2007. *See id.* Next, the Court noted Plaintiffs' failure to dispute Oracle's contention, in the instant motion to dismiss, that Plaintiffs' Sherman Act and state law claims accrued by 2009. *See id.* Finally, the Court noted that the parties have not disputed that Plaintiffs' claims are untimely absent an exception to the default accrual rules or a tolling doctrine. *See id.*

In the requested supplemental briefing, the parties do not contest the Court's understanding of the parties' positions. *See generally* ECF Nos. 148, 150, 153, 155. However, Plaintiffs now argue that Hari's claims are timely under the default accrual rules, without any exceptions to the default accrual rules or tolling. According to Plaintiffs, Hari's claims did not accrue until 2012, when Hari was hired by Oracle and injured through the receipt of an artificially depressed salary from Oracle. ECF Nos. 150, 155. Specifically, Plaintiffs state that Hari began working for Oracle in 2012 when Oracle acquired the company for whom Hari worked. *See* ECF No. 150, at 2. As in Plaintiffs' original briefing, Plaintiffs' two supplemental briefs fail to address the state law default accrual rules. Instead, Plaintiffs' supplemental briefs focus entirely on the federal default accrual rule for Hari's Sherman Act claim, and cite only federal case law. *See* ECF No. 150, at 2-3; ECF No. 155. Similarly, Oracle's two supplemental briefs focus on the accrual of Hari's Sherman Act claim. *See generally* ECF Nos. 148, 153. Oracle argues that Hari's Sherman Act claim accrued by 2009, when Oracle allegedly committed the anticompetitive conduct that depressed the labor market in which Hari participated. Oracle asserts that Hari's state law claims accrued at the same time as Hari's Sherman Act claim. *See* ECF No. 148, at 4 n.2.

Accordingly, in four rounds of briefing—the opposition to the motion for judgment on the pleadings, the opposition to the instant motion to dismiss, and the two supplemental briefs—Plaintiffs assume that Plaintiffs' state law claims accrue at the same time as Plaintiffs' Sherman Act claims. Plaintiffs have never distinguished the accrual of Plaintiffs' state law claims from the accrual of Plaintiffs' Sherman Act claim under the default accrual rules. By contrast, Oracle has repeatedly asserted that Plaintiffs' Sherman Act and state law claims accrue at the same time. In the supplemental briefing, both parties focus on the federal default accrual rule for Sherman Act claims to determine the accrual of Hari's state law and Sherman Act claims.

■■■■ Under California law, the general accrual rule is the "last element rule," where a claim accrues " 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation." *Pooshs v. Philip Morris USA, Inc.,* 51 Cal.4th 788, 797, 123 Cal.Rptr.3d 578, 250 P.3d 181 (2011) (quoting *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397, 87 Cal. Rptr.2d 453, 981 P.2d 79 (1999)). The California Supreme Court has held that federal interpretations of the Sherman Act are instructive in interpreting California's Cartwright Act. *Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal.4th 1185, 1195, 151 Cal.Rptr.3d 827, 292 P.3d 871 (2013). Given the *Aryeh* court's guidance and the parties' exclusive focus on the default accrual rule for Hari's Sherman Act claim, the Court addresses Hari's Sherman Act claim to resolve when Hari's Sherman Act and California law claims accrued under the default accrual rules. *See In re Animation Workers Antitrust Litig. ("Animation Workers I"),* 87 F.Supp.3d 1195, 1208 n. 10

(N.D.Cal. 2015) (considering timeliness of Sherman Act claim to resolve both Sherman and Cartwright Act statutes of limitations); *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 5:11–cv–03613 EJD, 2012 WL 2711040, at *8 (N.D.Cal. July 6, 2012) (interpreting Sherman Act and Cartwright Act claims together for statutes of limitations purposes); *Stanislaus Food Prods. Co. v. USS–POSCO Indus.*, No. CV F 09–0560 LJO SMS, 2010 WL 3521979, at *13 (E.D.Cal. Sept. 3, 2010) (applying same accrual rules to Sherman Act and Cartwright Act claims).

Plaintiffs contend that, under the default accrual rule for a Sherman Act claim, Hari's claims accrued at the time Hari experienced injury from Oracle's anticompetitive conduct. ECF No. 150, at 2–3. According to Plaintiffs, Hari was not injured until 2012, when Oracle paid Hari an artificially depressed salary. *Id.* Oracle counters that Hari's claims accrued at the time of the anticompetitive conduct, and thus Hari's claims accrued in 2009, at the latest, when Oracle entered into the last alleged Secret Agreement. ECF No. 148, at 2–5. Oracle also argues that Hari was injured in 2009, at the latest, because Hari was in the allegedly affected labor market working at another technology company that was acquired by Oracle in 2012, and thus received a depressed salary prior to Hari's employment with Oracle. *Id.*; ECF No. 150, at 4 (referring to Hari's LinkedIn account to confirm Hari's previous employment). Finally, Oracle claims that Plaintiffs "have consistently alleged that they suffered an injury and their claims accrued at the time of Oracle's allegedly anticompetitive conduct." ECF No. 148, at 4.

The Court agrees with Oracle that Hari's Sherman Act claim accrued by 2009 under the default accrual rule. The Court finds the Ninth Circuit's recent decision in *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202–03 (9th Cir.2014), *cert.*

*denied,* —— U.S. ——, 135 S.Ct. 1157, 190 L.Ed.2d 912 (2015), to be instructive. In *Samsung*, Panasonic Corporation, Panasonic Corporation of North America, and SD–3C, LLC (collectively, "Panasonic") allegedly entered into anticompetitive agreements in 2003 and 2006 to charge a royalty for certain manufacturers producing SD cards. *Id.* at 1201. When Samsung Electronics Company ("Samsung") began to manufacture SD cards in 2006, Samsung paid the requested royalty to Panasonic. *Id.* at 1202. Samsung filed suit in 2010 and alleged that Panasonic's agreements violated the Sherman Act. *Id.*

■■■ Samsung was not in the SD market at the time of Panasonic's initial anticompetitive agreement, and thus "the harm to Samsung challenged in this suit was speculative at the time of the initial wrong." *Id.* at 1204–05. However, the Ninth Circuit did not find that Samsung's claim accrued, under the default accrual rules, when Samsung began to pay royalties in 2006. *See id.* at 1202–05. Rather, the Ninth Circuit held that the continuing violation and speculative damages exceptions to the default accrual rules were necessary to render Samsung's claims timely. *Id.* at 1203–05 (noting that the 2006 agreement was a continuing violation, and that the speculative damages exception applies when damages are not clear at the "time of the initial act"). Under the Ninth Circuit's reasoning, Samsung's claim accrued—absent an exception to the default accrual rules—at the time of Panasonic's anticompetitive conduct in 2003. *See id.* at 1203–04. Therefore, in the Ninth Circuit, Sherman Act claims accrue under the default accrual rules at the time of the alleged anticompetitive conduct. *See id.*; *see also Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir.1987) ("A cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations *runs from the commission of the act.*" (emphasis added) (cit-

ing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971))); *Oliver v. SD–3C LLC*, 751 F.3d 1081, 1087 (9th Cir.2014) (noting that, under the Clayton Act, "the limitations period may start to run after the defendant's initial violation of the antitrust law," if an exception applies).

The Court acknowledges that some courts, including this Court, have stated that Sherman Act claims accrue "at the time of injury." *See Animation Workers I*, 87 F.Supp.3d at 1216; *see also Detrick v. Panalpina, Inc.*, 108 F.3d 529, 538 (4th Cir.1997) (noting that "under the antitrust accrual rule, the statute of limitations is triggered by the date of the injury alone"). However, these courts were determining whether to apply a discovery rule of accrual to the plaintiff's claims. *See Animation Workers I*, 87 F.Supp.3d at 1208 (rejecting argument that accrual began "at the time that Plaintiffs discovered, or reasonably should have discovered[,] their injuries"); *Detrick*, 108 F.3d at 538 (discussing the "injury discovery" rule applied by the Ninth Circuit in RICO actions). In neither case did the timeliness of the plaintiff's claims turn on whether accrual began at the time of injury or the time of the alleged anticompetitive conduct, and thus the courts were not presented with the arguments made by the parties in the instant case. Additionally, this Court is bound by the Ninth Circuit's decision that, absent an exception, a Sherman Act claim accrues at the time of the anticompetitive conduct. *See Samsung*, 747 F.3d at 1202–05.

■■■■■ In the instant case, Oracle's alleged anticompetitive conduct is entering into the Secret Agreements. *See* SAC ¶¶ 2-6, 113-116, 120-121, 124. Plaintiffs allege that Oracle first entered into a Secret Agreement in 2006. *Id.* ¶ 30. This Secret Agreement, and others later formed by Oracle, allegedly depressed compensation in the labor market for technology and management employees. SAC ¶¶ 9, 60-61. If each subsequent Secret Agreement entered into by Oracle constituted a new antitrust violation, then Hari's Sherman Act claim could have accrued as late as 2009, the last year in which Plaintiffs allege that a specific new Secret Agreement was entered into by Oracle. *See generally* SAC. Accordingly, the statute of limitations for Hari's Sherman Act claim began to run, under the default accrual rules, by 2009. *See Samsung*, 747 F.3d at 1202–05. As noted above, the Court finds that—in light of Plaintiffs' assumption that Hari's California law claims and Sherman Act claims accrue at the same time—Hari's California law claims also accrued by 2009. The statutes of limitations expired four years later, in 2013, a year before the complaint was filed on October 14, 2014. Thus, as with Garrison's and Van Vorst's claims, Hari's claims are untimely unless an exception to the default accrual rules or a tolling doctrine applies.

In hopes of avoiding the time bar, Plaintiffs offer the following five arguments: (1) Plaintiffs are entitled to statutory tolling under 15 U.S.C. § 16(i); (2) Oracle committed a "continuing violation"; (3) Oracle fraudulently concealed Oracle's anticompetitive conduct; (4) the California "discovery rule" applies to the UCL claim; and (5) the California "continuous accrual" rule applies to the California claims.[3] The Court addresses each argument in turn.

---

**3.** The Court notes that Plaintiffs do not argue that the speculative damages exception, discussed by the Ninth Circuit in *Samsung*, applies to Plaintiffs' claims. In the instant case, after Plaintiffs have twice amended the complaint and had multiple opportunities to brief the issue, "[t]he Court is not inclined to manufacture arguments on Plaintiff[s'] behalf." *Kiland v. Boston Scientific Corp.*, No. C 10–4105 SBA, 2011 WL 1261130, at *7 (N.D.Cal. Apr. 1, 2011) (citing *Indep. Towers of Wash. v.*

### D. Tolling under Section 16(i)

Plaintiffs contend that the statutes of limitations are tolled by four past DOJ proceedings: (1) the DOJ investigation into Oracle, from 2009 until October 2014; (2) and (3) the DOJ's lawsuits against Adobe and Lucasfilm, which Plaintiffs treat collectively, from September 24, 2010 to June 3, 2012; and (4) the DOJ's lawsuit against eBay, from November 16, 2012 to September 2, 2014.[4] Plaintiffs rely on 15 U.S.C. § 16(i), which provides:

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

15 U.S.C. § 16(i).

▮▮▮ In other words, to receive tolling under § 16(i) a private plaintiff must show that the plaintiff's antitrust suit is "based in whole or in part on any matter complained of" in a government antitrust proceeding. *Id.*; *see also Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F.Supp. 84, 86 (D.Haw.1985) (noting "[t]he plaintiff bears the burden of showing that the two suits are based in whole or in part" on the same matter) (citing *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 233 (6th Cir.1974)). To determine whether a private suit is "based in whole or in part on any matter complained of" in prior government action, the Court is "limited to a comparison of the two complaints on their face." *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir.1983) (quoting *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965)).

▮▮▮ A private plaintiff "is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants." *Leh*, 382 U.S. at 59, 86 S.Ct. 203. However, there must be a "real relation" between the government and private causes of action. *Id.* "The real relation test is met where the conspiratorial acts of the defendants are intertwined with and fundamentally the same" as those alleged in the government's filed lawsuits. *See Charley's Tour*, 618 F.Supp. at 86. Factors that courts have considered to assess a "real relation" include the "substantial identity of parties," *Leh*, 382 U.S. at 63, 86 S.Ct. 203, whether Plaintiffs have alleged "a conspiracy that included the objectives, means, time span, and geographic scope of

---

*Washington*, 350 F.3d 925, 929 (9th Cir.2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.")). Accordingly, the Court addresses only the exceptions to the default accrual rules and the tolling doctrines raised in Plaintiffs' original and two supplemental briefs.

4. In Plaintiffs' brief, they argue that the *eBay* litigation tolls their claims until September 2, 2014. However, the DOJ proceeding against eBay ended on September 2, 2014. Section 16(i) provides that the statute of limitations is "suspended during the pendency thereof *and for one year thereafter.*" (emphasis added). Oracle suggests that Plaintiffs seek to toll the statutes of limitations until September 2, 2015. *See* Reply at 5.

the conspiracy alleged in the government suit" and whether "evidence adduced in the trial of the government suit would be of practical assistance to plaintiffs," *Chipanno*, 702 F.2d at 832. For example, § 16(i) "tolls the statute of limitations against all participants in a conspiracy which is the object of a Government suit, whether or not they are named as defendants or conspirators therein." *Zenith Radio Corp.*, 401 U.S. at 336, 91 S.Ct. 795.

Plaintiffs first contend that the DOJ investigation into Oracle tolls the statutes of limitations. According to Plaintiffs, DOJ opened an investigation into Oracle in 2009 when DOJ began investigating other technology companies for unlawful recruiting practices. Opp. at 3. DOJ informed Oracle that DOJ would not pursue a case against Oracle on October 29, 2014, more than two weeks after Plaintiffs filed the instant action. ECF No. 114-1 Ex. A.

At the outset, the Court notes that Plaintiffs spend only a single sentence arguing that the DOJ investigation into Oracle tolls the statutes of limitations. Opp. at 7-8. Plaintiffs rely solely on *Dungan v. Morgan Drive–Away, Inc.*, 570 F.2d 867, 871 (9th Cir.1978), in which the Ninth Circuit noted that "[t]he initiation of an investigation or a decision to prosecute more comfortably fits the statutory language than does empanelling the grand jury." However, the Ninth Circuit proceeded to say that to begin tolling upon the initiation of an investigation or upon a decision to prosecute "would introduce great uncertainty in fixing the time at which the suspension period commences" and "would frustrate the statute-of-repose purpose of section 16(i)." *Id.* The Ninth Circuit therefore *declined* to select the initiation of a government investigation as the trigger for the start of § 16(i) tolling. *Id.*

Instead, courts have used the date on which the government filed a complaint as the date on which statutory tolling be-

gan. *See Leh*, 382 U.S. at 59–63, 86 S.Ct. 203 (giving tolling effect from the time that the government filed a complaint); *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 313, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965) (giving tolling effect from the date Federal Trade Commission filed a proceeding); *Chipanno*, 702 F.2d at 832–33 (giving tolling effect from the date government filed a complaint); *In re Scrap Metal Antitrust Litig.*, No. 1:02 CV 0844, 2006 WL 2850453, at *22 (N.D.Ohio Sept. 30, 2006) (noting "more than a government investigation is needed to activate § 16(i)"); *see also* Areeda and Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, § 321 (2014) (stating that § 16(i) "is not triggered by . . . government proceedings falling short of the filing of a complaint"). This view is consistent with the instruction of the U.S. Supreme Court and the Ninth Circuit that the private and government proceedings are to be compared by examining "*the two complaints* on their face." *Chipanno*, 702 F.2d at 832 (emphasis added) (quoting *Leh*, 382 U.S. at 59, 86 S.Ct. 203). In 2014, DOJ "closed its investigation of [Oracle] relating to potential agreements among certain firms regarding employee recruiting," without filing a complaint. ECF No. 114-1 Ex. A. Because DOJ never filed a complaint against Oracle, Plaintiffs are not entitled to § 16(i) tolling based on the DOJ's investigation of Oracle.

Plaintiffs additionally seek tolling under § 16(i) for the pendency of three government-filed lawsuits: *United States v. Adobe Sys., Inc.*, No. 10–CV–1629 (D.D.C.), *United States v. Lucasfilm, Inc.*, No. 10–CV–2220 (D.D.C.), and *United States v. eBay, Inc.*, No. 12–CV–5869 (N.D.Cal.). To receive statutory tolling for the pendency of these lawsuits, Plaintiffs must show that these lawsuits are "based in whole or in part on the same matter" as the instant

lawsuit. *Charley's Tour*, 618 F.Supp. at 86. Plaintiffs argue that the three government-filed lawsuits and the instant lawsuit have many similarities: the agreements alleged in each of the lawsuits seek wage suppression; the "means" of each of the lawsuits were non-solicitation agreements implemented in part through "no hire" lists; Google, Adobe, and Intuit, which allegedly entered anti-solicitation agreements with Oracle, were defendants in *Adobe*; and there is an overlap in time between the alleged conspiracies. Opp. at 9. However, Plaintiffs do not point to specifics in any complaint and do not conduct a "comparison of the [ ] complaints on their face." *Chipanno*, 702 F.2d at 832.

The Court first notes that there is no overlap between the parties in the government-filed lawsuits and the instant lawsuit. The *Adobe* defendants were Adobe, Apple, Google, Intel, Intuit, and Pixar. ECF No. 111-11. The sole defendant in *Lucasfilm* was Lucasfilm. ECF No. 114-1 Ex. B. The sole defendant in *eBay* was eBay. *Id.* Ex. E. Oracle was not a defendant in any of the three government-filed lawsuits.

Moreover, not one of the complaints in the three government-filed lawsuits mentions Oracle. The *Adobe* complaint alleges five substantially similar agreements, each between two companies: (1) Apple and Google, (2) Apple and Adobe, (3) Apple and Pixar, (4) Google and Intel, and (5) Google and Intuit. ECF No. 111-11. The two companies in each agreement agreed not to "cold call" each other's employees. *Id.* The *Adobe* complaint does not mention any other technology company. Oracle was not a party to any of these agreements, and none of the alleged agreements restricted any of the named companies from hiring employees from Oracle. *Id.*

Similarly, the *Lucasfilm* complaint alleged an agreement between Lucasfilm and Pixar "not to cold call, not to make counteroffers under certain circumstances, and to provide notification when making employment offers to each other's employees." ECF No. 114-1 Ex. B. The *Lucasfilm* complaint does not mention any other technology companies.

Likewise, the *eBay* complaint alleges that eBay and Intuit "agreed not to recruit each other's employees" and "eBay agreed not to hire Intuit employees, even those that approached eBay for a job." *Id.* Ex. E. The complaint further alleges direct communications between eBay CEO Meg Whitman and Founder and Chairman of the Executive Committee at Inuit Scott Cook. *See id.* The *eBay* complaint does not mention any other technology companies.

Because the conspiracies alleged in the *Adobe*, *Lucasfilm*, and *eBay* complaints do not involve Oracle, Plaintiffs' allegations of misconduct by Oracle in the instant lawsuit are not "intertwined with and fundamentally the same as those alleged in the government action[s]." *Charley's Tour*, 618 F.Supp. at 86. As noted, the government-filed lawsuits and the instant lawsuit lack "substantial identity of the parties." *Leh*, 382 U.S. at 63, 86 S.Ct. 203. Additionally, Plaintiffs have not shown that "evidence adduced in the trial of the government suit would be of practical assistance to plaintiffs," as there is no need for Plaintiffs to prove the existence of any of the agreements in *Adobe*, *Lucasfilm*, or *eBay*. *Chipanno*, 702 F.2d at 832; *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F.Supp. 481, 486 (C.D.Cal.1991) (finding no factual overlap from the government lawsuit when the government lawsuit was based on anticompetitive conduct in different geographic area than that alleged in the private lawsuit).

 Plaintiffs rely heavily on the similarity between the kinds of alleged anticompetitive behavior, namely the existence of anti-solicitation agreements in both the

instant lawsuit and the three government-filed lawsuits. However, "the pendency of separate and distinct actions that the government filed against other [related companies] that were never alleged to be a part of a conspiracy" does not toll the statute of limitations for a private suit against a related company. *See Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 693 (9th Cir.1982); *see also Chipanno*, 702 F.2d at 830, 833 (finding § 16(i) applied when plaintiffs sued three of the four defendants in prior government proceeding and alleged a conspiracy that included the objectives, means, time span, and geographic scope of the conspiracy alleged in the government suit); *see also Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 322 (4th Cir.2007) (rejecting application of § 16(i) when some of the private suit's counts alleged a different market than the government suit). Oracle was not a "participant[ ] in a conspiracy which is the object of a Government suit." *Zenith Radio Corp.*, 401 U.S. at 336, 91 S.Ct. 795. Consequently, Plaintiffs have not met their burden of showing a "real relation" between the three government-filed lawsuits and the instant lawsuit, and are not entitled to statutory tolling. *See Leh*, 382 U.S. at 59, 86 S.Ct. 203; *Novell Inc. v. Microsoft Corp.*, 505 F.3d 302, 322 (4th Cir.2007) ("[W]e do not believe § [16(i) ] should be construed to permit private plaintiffs to 'sit on their rights' and to assert, years after the traditional statute of limitations has run, 'claims so much broader than those asserted by the government that they open entirely new vistas of litigation.' ").

**E. Continuing Violation**

 Under the "continuing violation" theory, "each overt act that is part of the [antitrust] violation and that injures the plaintiff. . .starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*,

521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (internal quotation marks omitted); *see also Pace*, 813 F.2d at 237 ("A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured."). In the Ninth Circuit, an overt act restarts the statute of limitations in an antitrust action if it: (1) is "a new and independent act that is not merely a reaffirmation of a previous act"; and (2) "inflict[s] new and accumulating injury on the plaintiff." *Samsung*, 747 F.3d at 1202 (internal quotation marks omitted).

The Court previously determined that Plaintiff Garrison's original complaint failed to allege a continuing violation because "the bald assertion that '[Oracle's] conspiracy was a continuing violation through which [Oracle] repeatedly invaded Plaintiff and Plaintiff Class' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein' is insufficient to show a continuing violation." *Garrison*, 2015 WL 1849517, at *7. The Court noted, "the complaint is largely bereft of *any* dates or details with regards to Oracle's specific conduct" and "there are no allegations of any new or independent actions taken by Oracle after October 14, 2010—i.e., within four years of the filing date of this complaint—that caused Plaintiff any new or accumulating injury." *Id.* The Court further explained, "Plaintiff has simply failed to allege any facts indicating *when* the supposed continuing violations took place, let alone that they took place on or after October 14, 2010." *Id.* The Court cautioned Plaintiffs that "failure to cure the deficiencies identified" would result in a dismissal with prejudice. *Id.* at *9.

Plaintiffs assert that the SAC fixes the deficiencies in the original complaint by alleging: (1) Oracle entered new Secret Agreements and added companies to the

"no hire" list "well into 2012," SAC ¶ 49; (2) Oracle adhered to, enforced, and reaffirmed the Secret Agreements, *id.* ¶ 73; and (3) Plaintiffs were not solicited by other companies while working at Oracle and could not find employment outside of Oracle until 2015, *id.* ¶¶ 74-81.[5]

 A review of the allegations in the SAC again fails to reveal any specific conduct by Oracle during the limitations period. Although Plaintiffs allege that Oracle continued to enter into new Secret Agreements and add companies to the "no hire" list "well into 2012," Plaintiffs fail to identify a single new agreement after 2009. *See generally* SAC. Although the Court accepts "factual allegations in the complaint as true," *Manzarek*, 519 F.3d at 1031, the Court need not accept as true "allegations that are merely conclusory," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.2008). The Court's order granting Oracle's motion for judgment on the pleadings found that "the complaint is largely bereft of *any* dates or details with regards to Oracle's specific conduct," and explicitly warned Plaintiffs that they must allege details regarding "any new or independent actions taken by Oracle after October 14, 2010" in order to plead a continuing violation. *See Garrison*, 2015 WL 1849517, at *7. Nonetheless, Plaintiffs' SAC—which is the third complaint filed in this case—does not identify any information as to an agreement entered into by Oracle after 2009, including the companies involved or the dates of formation. Plaintiffs' concluso-

ry allegations are insufficient to allege that Oracle formed a new Secret Agreement after 2009. *See In re Gilead Scis.*, 536 F.3d at 1055 (noting courts do not need to accept allegations that are "merely conclusory").

 Similarly, all of Plaintiffs' allegations about Oracle's enforcement of the Secret Agreements are undated or predate 2009. *See* SAC ¶¶ 26, 31, 41, 43 (discussing Oracle's dissemination of the "no hire" list and adherence to the Secret Agreements in 2007 and 2008); *id.* ¶¶ 35-39 (discussing Oracle's enforcement of the Secret Agreements in 2007 and 2008). Plaintiffs do allege that the 2009 "no hire" CoreTech agreement, for example, was not set to terminate until 2012. *Id.* ¶ 49. However, Plaintiffs need to do more than merely allege a continuing violation—they must also allege an overt act:

> A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured. *However, even when a plaintiff alleges a continuing violation, an overt act by the defendant is required* to restart the statute of limitations and the statute runs from the last overt act.

*Pace*, 813 F.2d at 237 (emphasis added) (citations omitted); *see also Samsung*, 747 F.3d at 1202–03 (explaining that an overt act must be "a new and independent act that is not merely a reaffirmation of a previous act"). Merely carrying out during the limitations period a final, binding deci-

---

**5.** Plaintiffs expressly disclaim that Oracle's hiring of Hari in 2012 constitutes a continuing violation. *See* ECF No. 155, at 3. The Court agrees that Oracle's hiring of Hari is not an "overt act" sufficient to trigger the continuing violation theory. Even if Oracle hired Hari at an artificially depressed salary, the salary was based on alleged anticompetitive actions taken by Oracle prior to the limitations period. *See In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71–72 (9th Cir.

1979) (holding that the defendants' refusal during the limitations period to purchase afterburner devices from a particular company did not constitute an overt act because the defendants' refusal was based on an agreement entered into prior to the limitations period). Thus, Oracle's hiring of Hari is not "a new and independent act that is not merely a reaffirmation of a previous act." *See Samsung*, 747 F.3d at 1202.

sion made prior to the limitations period does not qualify as a new overt act. *See In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71–72 (9th Cir.1979) (holding that the defendants' refusal during the limitations period to purchase afterburner devices from a particular company did not constitute an overt act because the defendants' refusal was based on an agreement entered into prior to the limitations period). Plaintiffs fail to allege any new and independent actions by Oracle to enforce the 2009 CoreTech agreement—or any other agreement—during the limitations period.

In opposition, Plaintiffs rely on *Samsung*, 747 F.3d 1199, *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444–45 (9th Cir.1996), and *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1300–01 (9th Cir.1986). Opp. at 10. From these cases, Plaintiffs argue that each act by Oracle to enforce, renew, or expand the Secret Agreements was an overt act that restarted the limitations period. *Id.* at 10–11. However, Plaintiffs' argument misses the fact that Plaintiffs have simply failed to allege any acts of enforcement, renewal, or expansion after 2009.

Lastly, the Court turns to Plaintiffs' allegations that they were not solicited by other companies while working at Oracle and were unable to find meaningful employment after leaving Oracle. SAC ¶¶ 74–82. Plaintiffs argue that they "are entitled to the inference at the pleading stage that this was because of those agreements." Opp. at 11. Plaintiffs additionally point to the experience of one former Oracle employee, who was told by the recruiting company Riviera Partners that it could not place the former employee because Riviera Partners had an agreement with Oracle

not to perform job placement services for Oracle employees. *Id.* ¶ 55. Oracle counters that the failure of other companies to solicit, hire, or place Plaintiffs cannot be an overt act *by Oracle*. Mot. at 10; Reply at 8 n.9.

The Court agrees with Oracle that Plaintiffs have not alleged any overt acts by Oracle after 2009, as required by Ninth Circuit law. *See Pace*, 813 F.2d at 237 (holding that "even when a plaintiff alleges a continuing violation, an overt act *by the defendant* is required to restart the statute of limitations" (emphasis added)). Plaintiffs contend that any overt act by co-conspirators should be imputed to Oracle, and cite two cases holding that co-conspirators may be held jointly and severally liable for damages caused by violations of the antitrust laws. Opp. at 11 (citing *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir.1980); *In re K–Dur Antitrust Litig.*, 338 F.Supp.2d 517, 538 (D.N.J.2004)). However, these cases do not address the continuing violation theory nor what constitutes an "overt act," and Plaintiffs offer no substantive argument to apply these cases to the continuing violation context. As Plaintiffs have provided no basis for the Court to conclude that Oracle committed an overt act, the Court concludes that Oracle has not committed a continuing violation based on the acts of other companies.

Because Plaintiffs do not allege an overt act by Oracle during the limitations period, the Court finds that Plaintiffs have failed to plead a continuing violation—namely, that Oracle engaged in a "new and independent act that is not merely a reaffirmation of a previous act," which "inflict[ed] new and accumulating injury" on Plaintiffs.[6] *See Samsung*, 747 F.3d at 1202.

---

**6.** The Court reiterates that this result is the same even if the Court were to consider the documents submitted by Plaintiffs in their procedurally improper ex parte motion to supplement the record. *See* ECF No. 138. None of the proffered documents reveal specific Secret Agreements, or actions by Oracle

## F. Fraudulent Concealment

 The purpose of fraudulent concealment is to prevent a defendant from "concealing a fraud . . . until such a time as the party committing the fraud could plead the statute of limitations to protect it." *In re Animation Workers Antitrust Litig. ("Animation Workers II")*, No. 14–CV–04062–LHK, 123 F.Supp.3d 1175, 1194, 2015 WL 4974343, at *13 (N.D.Cal. Aug. 20, 2015) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874)). Thus, "[a] statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The plaintiff bears the burden of pleading and proving fraudulent concealment. *Conmar v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir.1988). To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual or constructive knowledge of the facts giving rise to [his] claim" as a result of the defendant's affirmative acts; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to his claim. *Hexcel*, 681 F.3d at 1060.

 Moreover, allegations of fraudulent concealment must be pled with particularity. *Conmar*, 858 F.2d at 502. Although "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage," *In re Rubber Chemicals Antitrust Litig.*, 504 F.Supp.2d 777, 789 (N.D.Cal.2007), Plaintiffs nevertheless must allege specific factual allegations of fraudulent concealment to survive a motion to dismiss, *In re Transpacific Passenger*

to ratify existing Secret Agreements, after

*Air Transp. Antitrust Litig.*, No. C 07–5634 CRB, 2011 WL 1753738, at *20–21 (N.D.Cal. May 9, 2011). "Conclusory statements are not enough." *Conmar*, 858 F.2d at 502.

In granting Oracle's motion for judgment on the pleadings, the Court rejected Plaintiff Garrison's argument that Oracle had an affirmative duty to disclose Oracle's participation in the alleged conspiracy. The Court then identified two deficiencies in Garrison's allegations of affirmative acts. First, the Court found that Garrison failed "to allege sufficient facts showing the 'who, what, where, when, and how' of Oracle's alleged fraudulent concealment." *See Garrison*, 2015 WL 1849517, at *8. Specifically, the Court explained that Garrison's allegation about Oracle's "pretextual, incomplete, or materially false and misleading explanations for hiring, recruiting, and compensation decisions made under the conspiracy" was "conclusory," "devoid of factual content" and did "not satisfy Rule 12(b)(6)'s pleading standard, much less Rule 9(b)'s heightened pleading standard." *Id.* Second, the Court found that Garrison alleged only passive concealment, not "affirmative acts" of concealment. *Id.* Because the Court found that Plaintiffs failed to allege affirmative acts, the Court did not have to reach whether Garrison had "actual or constructive knowledge" or "acted diligently."

Plaintiffs now concede that Oracle did not have a duty to disclose its allegedly illegal behavior. *See* Opp. at 13-15. Thus, Plaintiffs acknowledge that they must plead "affirmative acts to mislead" by Oracle. Plaintiffs contend that they have alleged four categories of "affirmative acts" sufficient to demonstrate fraudulent concealment: (1) "efforts by Oracle to limit access to and circulation of documents reflecting its secret agreements"; (2) "at-

2009.

tempts by Oracle in the DOJ proceedings and follow-on private litigation to conceal portions of key documents from public scrutiny through excessive redactions and overbroad confidentiality agreements"; (3) individual conversations about compensation where "Oracle misled the Plaintiffs themselves"; and (4) "misleading oral and written statements issued by Oracle during the limitations period," including Oracle's employee handbook and SEC filings. Opp. at 13-14. Oracle counters that (1) the allegations are insufficient under Rule 9(b); (2) Plaintiffs have pled passive and not active concealment; and (3) Plaintiffs did not rely on any misleading statements by Oracle. Mot. at 13-18; Reply at 9-11. The Court addresses Oracle's arguments in turn.

### 1. Rule 9(b)

Having reviewed the SAC, the Court finds that the allegations for two categories of "affirmative acts" fail to meet the heightened pleading standard of Rule 9(b). First, Plaintiffs fail to sufficiently allege affirmative acts of concealment during the DOJ proceedings. Second, Plaintiffs fail to sufficiently allege misleading conversations between Oracle personnel and Plaintiffs. After addressing these two categories, the Court will then address Plaintiffs' remaining two categories of overt acts: efforts by Oracle to maintain secrecy and the public statements by Oracle about compensation.

### a. DOJ Proceedings

■ Plaintiffs argue that Oracle's conduct during the DOJ investigation was an affirmative act of fraudulent concealment because "Oracle refused to produce any documents without first securing agreements that the document production would not be publicly filed or disclosed, including requiring that any documents that were publicly filed or disclosed would be heavily redacted so as not to publicly reveal the substance of the Secret Agreements and

the specific companies involved." SAC ¶ 104.

Plaintiffs do not cite, and the Court is not aware of, any case holding that agreements with DOJ to redact the public versions of documents properly produced during a government investigation are acts of fraudulent concealment. Furthermore, Plaintiffs do not provide the "who, what, where, when, and how" for any of the alleged document production or related agreements. See Swartz, 476 F.3d at 764. Plaintiffs point to no specific document or set of documents that was improperly withheld or redacted. Instead, Plaintiffs make only the conclusory allegation that Oracle took these actions "between 2009 and 2013, all with the intent of preventing the disclosure of its Secret Agreements." Id. Plaintiffs also fail to "set forth what is false or misleading" about the redactions. GlenFed, 42 F.3d at 1548. Here, Plaintiffs fail to allege any facts that could lead this Court to conclude that Oracle redacted documents during the DOJ investigation in a fraudulent or misleading way, let alone facts that could pass muster under Rule 9(b). See Garrison, 2015 WL 1849517, at *8 ("This conclusory allegation devoid of factual content does not satisfy Rule 12(b)(6)'s pleading standard, much less Rule 9(b)'s heightened pleading standard.").

### b. Misleading Conversations with Plaintiffs

■ Similarly, the Court finds insufficient under Rule 9(b) Plaintiffs' allegations that Oracle's misleading statements on compensation to Plaintiffs and class members constitute affirmative acts of fraudulent concealment. For instance, Plaintiff Garrison alleges that "an Oracle human resource employee" falsely informed Garrison that "Oracle's commission structure was competitive with other technology companies." SAC ¶ 90. Plaintiff Hari alleges that he was "directed by a senior exec-

utive to inform his team of subordinates that their compensation levels at Oracle were highly competitive and that they should be very pleased with the level of compensation Oracle offered." *Id.* Plaintiffs further allege that, "many times" during the class period, "Class members repeatedly asked Oracle about how compensation was determined," but Oracle responded misleadingly that compensation was "competitive" without admitting the Secret Agreements. *Id.* ¶¶ 97, 103. The SAC provides no further information about to whom Plaintiffs spoke at Oracle, where these conversations took place, the date or time of the alleged conversations, or the content of the conversations.

The Court previously admonished Plaintiffs that, to plead fraudulent concealment in accordance with Rule 9(b), Plaintiffs must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Garrison*, 2015 WL 1849517, at *8 (quoting *Swartz*, 476 F.3d at 764). However, the SAC still fails to allege the "who, what, where, when, and how" of Oracle's allegedly misleading conversations with Plaintiffs and class members. For example, the SAC does not specify the identity of the parties who allegedly made false representations to Plaintiffs, beyond broad descriptors like "an Oracle human resource employee," a "senior executive," and "Oracle." SAC ¶¶ 90, 97. Plaintiffs additionally do not specify the time, date, or place of the allegedly misleading conversations. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993). ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). Without more specific information as to who spoke to Plaintiffs when, Plaintiffs have not given Oracle sufficient notice of what conversations Plaintiffs allege were fraudulent. As such, Oracle is hindered in its ability to adequately defend against the accusation through the testimony of the Oracle employees involved. *See Swartz*, 476 F.3d at 764 ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."); *see also Das v. WMC Mortg. Corp.*, 831 F.Supp.2d 1147, 1166 (N.D.Cal.2011) ("Plaintiffs, for instance, did not plead with the requisite particularity the name of the AmNet employee who concealed material facts....As such, Plaintiffs have failed to sufficiently allege the circumstances constituting the alleged fraudulent concealment."). As this Court stated in its previous order, such conclusory allegations are insufficient to pass muster under Rule 9(b). *See Garrison*, 2015 WL 1849517, at *8.

### 2. Allegations of Oracle's Efforts at Secrecy

▮ Plaintiffs allege that Oracle's efforts to maintain the secrecy of the Secret Agreements constitute affirmative acts of fraudulent concealment. Specifically, Plaintiffs allege that Oracle aimed "to avoid dissemination of the [S]ecret [A]greements and restrict the knowledge to the smallest possible group within Oracle." SAC ¶ 101. Plaintiffs additionally allege that knowledge of the Secret Agreements was "confined to only the most senior executives and the most senior employees from [Oracle's] human resources and recruiting departments." *Id.* ¶ 109. Oracle counters that Plaintiffs' factual allegations reveal "that Oracle's hiring policies and agreements, as well as its 'no-hire' list, were disseminated broadly to Oracle's human resources and other employees, and were anything but secret." Mot. at 13. Oracle also argues that Plaintiffs' secrecy allegations amount to passive concealment, at most. *Id.* at 13–14.

▮ In this circuit, "affirmative acts" must consist of more than mere pas-

sive concealment. *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415–16 (9th Cir.1987). Affirmative conduct need not be "separate and apart" from acts in furtherance of the underlying conspiracy, but plaintiffs must plead more than acts that "by nature are self-concealing." *Id.* (citing *Conmar*, 858 F.2d at 505) (brackets omitted). Thus, the mere "failure to own up to illegal conduct" in response to an inquiry about whether the defendant engaged in illegal antitrust activity is not sufficient for fraudulent concealment, and to find otherwise "would effectively nullify the statute of limitations in these cases." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir.1987); *see also Conmar*, 858 F.2d at 505 (citing favorably *Pocahontas*, 828 F.2d at 218).

In reviewing the SAC, the Court agrees with Oracle that Oracle's alleged efforts at secrecy do not plead fraudulent concealment. Plaintiffs' specific factual allegations contradict Plaintiffs' general allegations about Oracle's efforts at secrecy. In the SAC, Plaintiffs excerpt over a dozen emails from Oracle employees discussing the "no hire" list or alleged Secret Agreements. These emails reveal that Oracle employees spoke openly about the "no hire" list and the gentleman's agreements, both within Oracle and with other companies. *Id.* ¶¶ 30-31, 36, 40-47, 98-100; *see also id.* ¶ 26 (noting HR webpage lists

"works for company on the Do Not Hire List" as a reason for rejecting a candidate). For instance, as "representative" of Oracle's "corporate policy" of secrecy, Plaintiffs highlight a January 17, 2008 email by Oracle's Director of Recruiting ordering an Oracle recruiter, "DO NOT email any employees of our partners or employees on our no-hire list." *Id.* ¶¶ 98, 202. In another email, the Director of Recruiting writes "to her recruiting team" that "our policy is and continues to be that **we do not directly solicit from our partners.** What this means is that we **do not** send email solicitations; we **do not** solicit by phone." *Id.* ¶ 41 (emphases in original).[7] Plaintiffs do not explain how these emails fraudulently concealed the Secret Agreements from Plaintiffs. If anything, these emails suggest the opposite—namely, that Oracle openly spoke about the Secret Agreements to ensure that Oracle employees adhered to the "no hire" list. *See Garrison*, 2015 WL 1849517, at *9.

Moreover, the emails in the SAC reveal that, rather than restrict knowledge of the Secret Agreements to a limited number of employees, Oracle shared the "no hire" list with numerous people: at least the "HR department," "key human resource and recruiting personnel," the "recruiting team," and Oracle's Director of Consulting. SAC ¶¶ 31, 41, 100; ECF No. 111-5. Of the dozen emails in the SAC, only one email was marked do not forward. *Id.* ¶ 100.[8] The

---

7. Oracle denies that the "no hire" list is unlawful, and argues that the identified non-solicitation agreements are either unilateral policies by Oracle not to hire from its business partners or are narrowly tailored and ancillary to legitimate business interests. Mot. at 4, 20-22. Oracle further argues that the "no hire" list reflects the tracking of permissible non-solicitation agreements that DOJ requires of the *Adobe* and *eBay* defendants. *Id.* at 3–4.

8. Plaintiffs also allege that an Adobe employee sent an email about a "no hire" agreement to an Oracle employee from the Adobe em-

ployee's private email account. SAC ¶ 47. However, Plaintiffs do not argue that the *Adobe employee's* act should constitute fraudulent concealment by Oracle. Additionally, Plaintiffs fail to allege that the use of a private email account was unusual at Adobe. *See Animation Workers II*, 123 F.Supp.3d at 1187, 2015 WL 4974343, at *8 (plaintiffs averred that the defendants "sometimes communicated about the conspiracy over personal email accounts instead of employer accounts," which was a "sharp deviation from standard business practice").

"do not forward" email was not confined to a limited group of senior executives, but rather was sent "to the HR department" by an "Oracle employee." *Id.* (February 12, 2008 email allegedly "attaching a 'No Hire' list, and directing them to not forward, but to call if they have any questions"). Thus, Plaintiffs' allegations show that Oracle did not limit knowledge of the Secret Agreements "to only the most senior executives and the most senior employees from [Oracle's] human resources and recruiting departments" as Plaintiffs allege. *Id.* ¶ 109

By comparison, in *Animation Workers II*, the Court found that the plaintiffs had alleged affirmative acts to keep the conspiracy secret. The *Animation Workers II* plaintiffs alleged that the defendants took efforts to avoid sending emails related to the non-solicitation agreements, to avoid writing down the details of the non-solicitation agreements, and to eliminate any paper trail relating to the agreements by using a code name for the agreements. *Animation Workers II*, 123 F.Supp.3d at 1200–02, 2015 WL 4974343, at *19. These allegations of secrecy in *Animation Workers II* detailed the specific conduct taken by the defendants to disguise the conspiracy. For example, the complaint in *Animation Workers II* alleged that one of the defendants, Lucasfilm, "made affirmative efforts to eliminate a paper trail regarding its code-named 'DNR' agreements. In an October 2009 'Recruiting Staff Meeting Summary,' Lucasfilm staff emphasized in bolded, all-caps lettering that all discussions of 'DNR' needed to be conducted over the phone: 'DNR questions CALL Steve. If you see an email forward to Steve and one of our lawyers.'" *Animation Workers II*, Second Consolidated Amended Class Action Compl., ECF No. 121 ¶ 138.

Similarly, in *Lithium Ion* a district court found fraudulent concealment when defendants took affirmative steps to destroy evidence of the conspirators' secret meetings, avoided memorializing conversations, and used secret codes to refer to coconspirators and topics. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13–MD–2420, 2014 WL 309192, at *16 (N.D.Cal. Jan. 21, 2014). The *Lithium Ion* plaintiffs supported their allegations by quoting specific examples of the defendants' affirmative acts to keep the conspiracy secret, such as an email in which the representative of one of the defendants "asked that the recipients of his email…'destroy this e-mail immediately.'" No. 13–2420, Second Consolidated Amended Compl., ECF No. 415 ¶ 219.

Here, by contrast, Plaintiffs fail to allege affirmative acts of concealment. Unlike the *Animation Workers II* and *Lithium Ion* plaintiffs, Plaintiffs put forth no specific factual allegations that Oracle took steps to keep employees from discussing the Secret Agreements, that Oracle attempted to eliminate a paper trail for the Secret Agreements, that Oracle avoided memorializing the Secret Agreements in writing, that Oracle used code names, or that Oracle employees avoided discussing the "no hire" list orally or in writing.

Additionally, Plaintiffs have not alleged that Oracle instructed supervisors or Human Resources personnel to respond to inquiries about compensation with a misleading, fraudulent, or pretextual response. At best, Plaintiffs allege only that Oracle's senior executives and members of the human resources and recruiting departments did not disclose the Secret Agreements to Plaintiffs. That is insufficient to allege "affirmative acts" of concealment. *Animation Workers I*, 87 F.Supp.3d at 1216 ("That Defendants did not affirmatively disclose the details of their allegedly unlawful conspiracy to Plaintiffs is neither surprising nor sufficient to constitute 'affirmative

steps to mislead.'" (citing *Conmar*, 858 F.2d at 505)).[9]

### 3. Reliance on Misleading Statements

The Court turns to Plaintiffs' remaining allegations, that Oracle made misleading public statements in Oracle's employee handbook and its SEC filings.[10] In the annual employee handbook, for example, Oracle stated that "Oracle commits rigorously to observing applicable antitrust or competition laws of all countries or organization." SAC ¶ 85; *see also id.* ¶¶ 84, 86, 89-91 (discussing employee handbook). In Oracle's annual SEC filings, Oracle stated, "In the software industry, there is substantial and continuous competition for highly skilled business, product development, technical and other person-nel.... We may also experience increased compensation costs that are not offset by either improved productivity or higher prices." *Id.* ¶¶ 93-94 (emphases omitted).

Plaintiffs allege that the SEC filings were false or misleading because Oracle was committing antitrust violations that enabled Oracle to reduce compensation expenses. *Id.* ¶ 95–96.

█ The Court recently found that similar allegations were insufficient to establish fraudulent concealment. *See Ryan II*, 147 F.Supp.3d at 891–93, 2015 WL 7429495, at *18–19. The Court is not aware of, and Plaintiffs do not cite, any case finding that a defendant's statements in routine public filings that the defendant obeys antitrust laws and participates in a competitive market alone suffice to show fraudulent concealment, absent other evidence that the defendant attempted to conceal its alleged antitrust behavior. *Id.* Rather, in the Ninth Circuit an affirmative act of denial of wrongdoing constitutes an affirmative act of fraudulent concealment only "if the circumstances make the plaintiff's reliance on the denial reasonable." *Conmar*, 858 F.2d at 505.[11]

---

9. In Plaintiffs' procedurally improper ex parte motion to supplement the record, and in Plaintiffs' supplemental briefing on the accrual of Hari's claims, Plaintiffs argue that the Court should find fraudulent concealment based on the actions of Google. *See* ECF No. 138 Ex. B; ECF No. 149, at 6-7. Plaintiffs appear to argue that, even in the absence of sufficient allegations that Oracle itself fraudulently concealed the Secret Agreements, the Court may find fraudulent concealment based entirely on actions of concealment taken by Google. As noted above, the Court struck Plaintiffs' ex parte motion. However, even if the Court were to consider, and accept, Plaintiffs' argument, the Court would find that Plaintiffs' ex parte motion does not sufficiently allege fraudulent concealment by Google that may be imputed to Oracle. The documents attached to Plaintiffs' ex parte motion reveal Google employees openly discussing a restricted hiring policy. *See* ECF No. 138 Ex. B. The documents do not reveal that Google took steps to keep employees from discussing the restricted hiring policy, that Google sought to destroy evidence of the restricted hiring policy, or that Google avoided discussing the restricted hiring policy in writing. There are also no allegations about fraudulent

concealment by Google in the SAC. Accordingly, the Court's conclusion that Plaintiffs have not sufficiently pled fraudulent concealment would not be altered were the Court to consider the documents from Plaintiffs' ex parte motion.

10. Plaintiffs also allege that Oracle continues to mislead the public about the Secret Agreements because an Oracle spokeswoman stated on October 14, 2014 that "Oracle was deliberately excluded from all prior litigation filed in this matter because all the parties investigating the issue concluded there was absolutely no evidence that Oracle was involved." *Id.* ¶ 108. Regardless of whether this statement misleads the public, the statement was made after Plaintiffs filed the instant action and thus could not have fraudulently concealed Plaintiffs' claims.

11. Other courts have found that misleading statements constitute affirmative acts of fraudulent concealment only if Plaintiffs allege actual reliance upon the allegedly misleading statements. *See Block v. Toyota Motor Corp.*, 5 F.Supp.3d 1047, 1061 (D.Minn.2014) (finding no fraudulent concealment based on allegedly false public statements where plain-

Plaintiffs here rely solely upon *Lithium Ion*, 2014 WL 309192, to support the argument that Oracle's allegedly misleading public statements constitute affirmative acts of fraudulent concealment. However, *Lithium Ion* did not hold that the defendants' public, putatively false statements were sufficient on their own to support an allegation of fraudulent concealment. Instead, "[i]t was the combination of those misleading, pretextual statements and the affirmative efforts taken to destroy evidence of the conspiracy or otherwise keep the conspiracies secret that supported the respective plaintiffs' fraudulent concealment allegations." *Animation Workers II*, 123 F.Supp.3d at 1200, 2015 WL 4974343, at *18. Specifically, the allegations in *Lithium Ion* that the defendants attempted to conceal their conspiracy by destroying documents, instructing employees not to memorialize conversations, and using code names constituted circumstances that rendered the plaintiffs' reliance on the defendants' public statements reasonable. *See Lithium Ion*, 2014 WL 309192, at *16 (describing how the *Lithium Ion* defendants "instruct[ed] the recipient of documents or emails to destroy, delete, or discard them after reading, instruct[ed] personnel to refrain from memorializing conversations, and used code to refer to particular entities or topics"); *see also Conmar*, 858 F.2d at 505 (denial of antitrust violations is an affirmative act of fraudulent concealment only "if the circumstances make the plaintiff's reliance on the denial reasonable").

Similarly, in *Animation Workers II*, the plaintiffs made ample allegations of affirmative acts of fraudulent concealment that rendered reliance upon the defendants' allegedly misleading public filings with the SEC reasonable. 123 F.Supp.3d at 1189–90, 2015 WL 4974343, at *10. These included allegations that the *Animation Workers II* defendants' Human Resources departments were exchanging voluminous information about salary ranges and bonuses and colluding to fix compensation. *Id.* at 1184–86, 2015 WL 4974343, at *6–7. For example, the *Animation Workers II* plaintiffs alleged that the defendants held meetings at which they "set the parameters of a compensation survey" that "provides wage and salary ranges for the studios' technical or artistic positions, broken down by position and experience level." *Id.* at 1184, 2015 WL 4974343, at *6. The *Animation Workers II* plaintiffs further alleged that after participating in these meetings fixing compensation, Pixar circulated annual "talking points" memos instructing managers on how to explain compensation. *Id.* at 1188, 2015 WL 4974343, at *9. These "talking points" memos allegedly did not mention Pixar's agreements colluding with Pixar's competitors to fix salary ranges, and the 2007 "talking points" memo specifically instructed managers to explain that "one of the main reasons" compensation increases were low was in order to "fund additional benefit programs." *Id.* The plaintiffs alleged that Pixar's president similarly sent a company-wide email justifying the modest compensation increases

tiffs did not show that they were aware of the public statements); *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10–5943 (DRD), 2011 WL 5008090, at *23 (D.N.J. Oct. 20, 2011) ("Implicit in the notion that a plaintiff's inquiry was misled or relaxed by an act of concealment is that the plaintiff relied on that act of concealment. . . . Here, Plaintiffs make no allegations that they were misled by Defendants' concealment of the alleged conspiracy and therefore have failed to meet the second ele-

ment of fraudulent concealment."). The Court observes that Plaintiffs do not allege that they ever read, let alone relied on, Oracle's SEC filings. *See Animation Workers I*, 87 F.Supp.3d at 1217 (noting "Plaintiffs simply offer no factual allegations with regards to . . . Plaintiffs' reliance on such information"). Though the Court need not resolve whether Plaintiffs must allege actual reliance, the Court is skeptical that Plaintiffs could satisfy any actual reliance requirement.

as a result of the company's construction of a new child-care center. *Id.*

The *Animation Workers II* plaintiffs additionally alleged that they had discussed their compensation with specific, named individuals, and provided the dates, method of communication, and content of these conversations. *Id.* The *Animation Workers II* plaintiffs alleged that in these specifically identified conversations, the individuals with whom they spoke did not mention the collusive salary agreements. *Id.* The *Animation Workers II* plaintiffs also alleged that the defendants took efforts to avoid sending emails related to the non-solicitation agreements, to avoid writing down the details of the non-solicitation agreements, and to eliminate any paper trail relating to the agreements by using a code name for the agreements. *Id.* at 1186–87, 2015 WL 4974343, at \*8. Further, the *Animation Workers II* plaintiffs alleged that the defendants made affirmative misrepresentations in their public statements and filings during the DOJ investigations and made unjustified or misleading sealing motions in order to improperly seal documents that did not satisfy the requirements for sealing. *Id.* at 1189–91, 2015 WL 4974343, at \*10–11. On top of all of these allegations, the plaintiffs alleged that the defendants falsely stated in their public filings that they engaged in competitive hiring. *Id.* at 1189–90, 2015 WL 4974343, at \*10. This Court found that the plaintiffs' allegations in combination were adequate to render

reliance upon the allegedly misleading SEC filings reasonable. *Id.*; *see also In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1119 (N.D.Cal.2008) (defendants provided "numerous specific pretextual reasons for inflated prices" and also kept conspiracy secret).

In the instant case, on the other hand, Plaintiffs have not alleged circumstances that would render their reliance on Oracle's allegedly misleading public statements reasonable. Plaintiffs' allegations of allegedly misleading conversations with Oracle employees and of efforts by Oracle to conceal the conspiracy during the DOJ investigation do not satisfy Rule 9(b), and Plaintiffs' allegations of efforts to keep the conspiracy secret by avoiding disseminating information about the Secret Agreements is contradicted by the numerous emails quoted by Plaintiffs in which Oracle freely discussed the "no hire" list and gentleman's agreements. Unlike the plaintiffs in *Animation Workers II* and *Lithium Ion*, Plaintiffs here have not alleged that Oracle used a code name to refer to the alleged anti-solicitation agreements or that Oracle instructed employees not to discuss the anti-solicitation agreements by email. Plaintiffs provided just a single example of an Oracle email that was labeled do not forward. Additionally, Plaintiffs have not alleged that Oracle instructed supervisors or Human Resources personnel to respond to inquiries about compensation with a misleading, fraudulent, or pretextual response.[12] Plaintiffs have not alleged that

---

12. Plaintiffs argue that the documents submitted with Plaintiffs' procedurally improper ex parte motion reveal Oracle exchanged compensation information with competitors. First, Plaintiffs include an email from an Adobe employee asking Oracle and other technology companies to participate in a survey regarding the equity options given to employees. *See* ECF No. 138 Ex. B. However, the email itself indicates that Oracle had not responded to the request for information. *See id.* Second, Plaintiffs point to a document listing compen-

sation information for Director and Vice President positions at four companies that Oracle received from a "confidential source." *Id.* Given that the proposed class excludes corporate officers and senior Oracle executives, it appears that this compensation information is not relevant to Plaintiffs' allegations. *See* SAC ¶ 64 (providing class definition). Moreover, Garrison, Van Vorst, and Hari were not corporate officers or senior executives, and thus this compensation information would not ap-

Oracle intentionally provided a false justification for why compensation was not higher, or that Oracle's supervisors and Human Resources personnel would have known about the effect of the anti-solicitation agreements on compensation.

Thus, Plaintiffs are left solely with the allegation that Oracle falsely represented in public filings that it abides by antitrust laws and engages in a competitive market. However, absent *any* evidence of pretextual justifications for compensation or of steps taken by Oracle to conceal the agreements, the public filings are inadequate, on their own, to satisfy Plaintiffs' burden to show that Oracle took affirmative acts to fraudulently conceal the alleged conspiracy. *See Hexcel*, 681 F.3d at 1060 ("[The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." (emphasis omitted) (alterations in original)); *see also Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett–Packard Co.*, 52 F.Supp.3d 961, 970 (N.D.Cal.2014) (noting, in securities regulation context, that "a code of ethics is inherently aspirational; it simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all"). Accordingly, Plaintiffs have failed to plead fraudulent concealment.

### G. Discovery Rule

Plaintiffs contend that the discovery rule applies to delay the accrual of their UCL claim. Opp. at 9. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that Oracle violated the UCL by entering into "illegal Secret Agreements to suppress wages of their respective workforce by restricting the ability of its managerial employees from attaining employment with the other technology companies." SAC ¶ 129. Plaintiffs further allege that these acts "were unfair, unlawful, and or unconscionable, both in their own right and because they violated the Sherman Act and the Cartwright Act." *Id.* ¶ 130.

In California, the discovery rule postpones accrual of a claim until the plaintiff discovers, or has reason to discover, the cause of action. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir.2008). Thus, according to Plaintiffs, their UCL claim did not accrue until Plaintiffs "discovered" the claim on May 17, 2013, when Plaintiffs gained access to documents from the *High–Tech* litigation that allegedly indicated that Oracle was party to Secret Agreements. Opp. at 9. Plaintiffs acknowledge that this Court determined in *Animation Workers I* and *Ryan I* that the discovery rule does not apply to UCL claims that arise purely out of anticompetitive conduct, like Plaintiffs' claim here. *Id.* at 9 & n.2. The Court dismissed as time barred the complaints in both *Animation I* and *Ryan I*, yet Plaintiffs rely on the same arguments that the Court rejected in both of those cases. *See* Opp. at 9-10; *see also Ryan II*, 147 F.Supp.3d at 893–96, 2015 WL 7429495, at *20–21 (rejecting application of discovery rule to UCL claim). The Court remains unpersuaded.

ply to them. Further, Plaintiffs fail to allege that Oracle used this information to create pretextual reasons for Plaintiffs' compensation, or to conceal the Secret Agreements. Plaintiffs thus fail to explain how Oracle fraudulently concealed the Secret Agreements

or why Plaintiffs' reliance on Oracle's SEC filings was reasonable. Accordingly, even if the Court were to consider the documents submitted in Plaintiffs' ex parte motion, the Court would not find that Plaintiffs adequately alleged fraudulent concealment.

Plaintiffs argue that *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal.4th 1185, 151 Cal.Rptr.3d 827, 292 P.3d 871 (2013), calls for the application of the discovery rule here. However, *Aryeh* does not require the application of the discovery rule to all UCL claims. *See Aryeh*, 55 Cal.4th at 1196, 151 Cal.Rptr.3d 827, 292 P.3d 871. Rather, the *Aryeh* court explained that the "UCL is a chameleon," and whether the discovery rule may apply is determined by "the nature of the right sued upon." *See id.* Under Cal. Code Civ. Proc. § 338(d), "the discovery rule applies to fraud actions." *See E–Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308, 1318, 64 Cal. Rptr.3d 9 (2007) (citing Cal. Code Civ. Proc. § 338(d)). Thus, the *Aryeh* court held that the discovery rule might be appropriate for UCL claims based on allegations of fraud, but the discovery rule does not apply to UCL claims based purely on allegations of unfair competition. *See Aryeh*, 55 Cal.4th at 1196, 151 Cal.Rptr.3d 827, 292 P.3d 871 (citing approvingly *M&F Fishing, Inc. v. Sea–Pac Ins. Managers, Inc.*, 202 Cal.App.4th 1509, 1531–32, 136 Cal.Rptr.3d 788 (2012) (nature of UCL unfair competition claim rendered discovery rule inappropriate)).

Applying *Aryeh*, this Court has already concluded that the discovery rule does not apply to UCL claims similar to the UCL claim alleged here. *See Animation Workers I*, 87 F.Supp.3d at 1210–11. In *Animation Workers I*, the plaintiffs based their UCL claim on the defendants' "efforts to limit competition for and suppress compensation of their employees" and the defendants' agreement "to restrict competition for class members' services through anti-solicitation agreements and agreements to set and fix the compensation of class members." *See* No. 14–4062, Consolidated Amended Class Action Compl., ECF No. 63 ¶ 143. The Court concluded that these allegations were allegations purely of anti-competitive conduct and not allegations of

fraud. *Animation Workers I*, 87 F.Supp.3d at 1210–11. Therefore, the Court held that the discovery rule did not apply to the *Animation Workers I* plaintiffs' UCL claim. *Id.*; *see also Ryan II*, 147 F.Supp.3d at 893–96, 2015 WL 7429495, at *20–21 (declining to apply the discovery rule to similar allegations of anticompetitive conduct).

In the instant case, the conduct alleged as the basis for Plaintiffs' UCL claim consists of Oracle's attempts to suppress the wages of Oracle employees by entering into non-solicitation Secret Agreements with other companies. SAC ¶ 129. These allegations are equivalent to the allegations in *Animation Workers I* that the *Animation Workers I* defendants took "efforts to limit competition for and suppress compensation of their employees" and "agreed to restrict competition for class members' services through anti-solicitation agreements and agreements to set and fix the compensation of class members." No. 14–4062, Consolidated Amended Class Action Compl., ECF No. 63 ¶ 143. Like the allegations in *Animation Workers I*, Plaintiffs' UCL claim allegations are purely of anticompetitive behavior.

Although elsewhere in the SAC Plaintiffs allege that Oracle engaged in fraudulent concealment, Plaintiffs' UCL claim does not mention fraudulent concealment or any alleged act of fraudulent concealment by Oracle as a basis for the alleged UCL violation. *See* SAC ¶¶ 126-133 (Plaintiffs' UCL claim). Indeed, Plaintiffs do not specify any fraudulent conduct by Oracle that violates the UCL. Moreover, the Court concludes above that the SAC does not sufficiently allege fraudulent concealment. *See supra*. Thus, the SAC does not include allegations of fraud sufficient to support application of the discovery rule to Plaintiffs' UCL claim. Because Plaintiffs' UCL claim is based solely on Oracle's

alleged anticompetitive conduct, the discovery rule does not apply. *See Ryan II*, 147 F.Supp.3d at 893–96, 2015 WL 7429495, at \*20–21 (rejecting application of discovery rule to UCL claim similar to the one in the instant case); *Animation Workers I*, 87 F.Supp.3d at 1210–11 (same).

## H. Continuous Accrual

 The Court turns to Plaintiffs' argument that the Court should apply the California "continuous accrual" rule to Plaintiffs' state law claims. Under "continuous accrual," "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period."[13] *Aryeh*, 55 Cal.4th at 1192, 151 Cal.Rptr.3d 827, 292 P.3d 871. "[S]eparate, recurring invasions of the same right can each trigger their own statute of limitations." *Id.* at 1198, 151 Cal.Rptr.3d 827, 292 P.3d 871. "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.'" *Id.* at 1199, 151 Cal.Rptr.3d 827, 292 P.3d 871 (quoting *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 110 Cal.App.4th 1288, 1295, 2 Cal.Rptr.3d 497 (2003)).

 Accordingly, California courts have held that disputes regarding monthly billing and payments qualify for continuous accrual, with each month triggering a new limitations period. *See, e.g., id.* at 1200–01, 151 Cal.Rptr.3d 827, 292 P.3d 871 (allegations of unlawful charges in monthly bills

were recurring obligations); *Tsemetzin v. Coast Fed'l Sav. & Loan Ass'n*, 57 Cal. App.4th 1334, 1344, 67 Cal.Rptr.2d 726 (1997) (monthly rent payments owed were a recurring obligation); *Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1388–89, 11 Cal. Rptr.3d 412 (2004) (monthly payments on a gas and oil lease created a recurring obligation). However, if the alleged recurring injuries during the limitations period "arose out of a single transaction" that occurred before the limitations period, the continuous accrual rule does not apply. *State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal.App.4th 402, 418, 57 Cal.Rptr.3d 156 (2007). Thus, allegedly fraudulent statements and admissions following an inaccurate valuation in an insurance claim did not trigger new limitations periods under the continuous accrual rule because all of the false statements arose out of the same insurance valuation, which occurred before the limitations period. *Id.*

 In the instant case, Plaintiffs contend that Oracle had a "continuing obligation not to collude with competitors to restrict free competition for engineers and managers that was susceptible to being breached each time a Secret Agreement was entered into or renewed or reaffirmed." Opp. at 13. The Court first observes that the SAC fails to allege this continuing duty. *See generally* SAC. Additionally, Oracle's duty "not to collude with competitors" bears little relation to the monthly payments or monthly bills that California courts have found to be periodic, recurring obligations warranting continuous accrual. *See Metz*, 149 Cal.App.4th at 418, 57 Cal. Rptr.3d 156 (holding that continuous ac-

---

**13.** The continuous accrual rule is similar to the continuing violation theory. "However, unlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising

from those breaches falling within the limitations period." *See Aryeh*, 55 Cal.4th at 1199, 151 Cal.Rptr.3d 827, 292 P.3d 871. Whether Plaintiffs have sufficiently alleged a continuing violation is discussed above. *See supra.*

crual does not apply where "[the plaintiff's] action does not involve a recurring obligation or any such period payment obligations"); *see also Aryeh*, 55 Cal.4th at 1200–01, 151 Cal.Rptr.3d 827, 292 P.3d 871 (applying continuous accrual to dispute over monthly bills); *Tsemetzin*, 57 Cal. App.4th at 1344, 67 Cal.Rptr.2d 726 (applying continuous accrual to dispute over monthly rent payments); *Armstrong Petroleum*, 116 Cal.App.4th at 1388–89, 11 Cal.Rptr.3d 412 (applying continuous accrual to dispute over monthly lease payments). The SAC contains no allegations of unlawful behavior by Oracle about any similar periodic transactions. *See generally* SAC.

More importantly, even if Oracle breached a continuing duty each time that Oracle "entered into or renewed or reaffirmed" a Secret Agreement, Plaintiffs have failed to allege that Oracle took any of these actions during the limitations period. Although Plaintiffs allege that Oracle continued to enter into new Secret Agreements and add companies to the "no hire" list "well into 2012," Plaintiffs fail to identify a single new agreement after 2009. *See generally* SAC. As discussed above, in the section on the continuing violation theory, although the Court accepts "factual allegations in the complaint as true," *Manzarek*, 519 F.3d at 1031, the Court need not accept as true "allegations that are merely conclusory." *In re Gilead Scis.*, 536 F.3d at 1055. Here, Plaintiffs offer no facts about what companies formed post-2009 Secret Agreements with Oracle, much less when those Secret Agreements took place. Similarly, all of Plaintiffs' allegations about Oracle's "reaffirmation" or enforcement of the Secret Agreements are undated or pre-date 2009. This includes Plaintiffs' allegations that Oracle disseminated the "no hire" list and abided by the Secret Agreements internally, *see* SAC ¶¶ 26, 31, 41, 43 (listing dates in 2007 and 2008), and that Oracle threatened other companies with fines or lawsuits to ensure adherence to the Secret Agreements, *id.* ¶¶ 36-39 (listing dates in 2007 and 2008). Thus, Plaintiffs have failed to identify any "separate, recurring invasions" of Plaintiffs' rights after 2009, and the continuous accrual rule does not apply. *See Aryeh*, 55 Cal.4th at 1198, 151 Cal. Rptr.3d 827, 292 P.3d 871.

## I. Leave to Amend

As Plaintiffs have failed to allege any applicable exception to the default accrual rules or tolling doctrine, the Court concludes that Plaintiffs' claims are time barred. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (alterations omitted). The Court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger*, 512 F.3d at 532.

In the instant case, the Court's April 22, 2015 order dismissed Plaintiffs' claims as untimely and noted that "the complaint is largely bereft of *any* dates or details with regards to Oracle's specific conduct." *See Garrison*, 2015 WL 1849517, at *9. The Court's April 22, 2015 order stated that "failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice." *Id.* Plaintiffs then filed a first amended complaint on May 28, 2015, ECF No. 102, and the SAC on June 5, 2015, ECF No. 105. The SAC has failed to cure the timeliness deficiencies—even after Plaintiffs had months of discovery, received all of the documents that Oracle

produced to DOJ during the DOJ investigation, filed an opposition to the motion to dimiss, submitted additional evidence in a procedurally improper ex parte motion, and filed two supplemental briefs. The Court finds that permitting further amendment would be futile. The Court also finds that giving Plaintiffs yet another opportunity to amend their complaint to address the statutes of limitations would cause undue delay and would unduly prejudice Oracle by requiring Oracle to file repeated motions to dismiss. Therefore, the Court's dismissal of Plaintiffs' SAC is with prejudice. *See Leadsinger,* 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Oracle's motion to dismiss with prejudice.

**IT IS SO ORDERED.**